## FEDERAL LIFE INSURANCE COMPANY *v.* BARNETT, ADMINISTRATRIX.

[No. 10,001. Filed December 17, 1919.]

1. INSURANCE.—*Reinsurance.—Action on Original Policy.—Complaint.—Necessity of Setting Out Reinsurance Contract.*—In a beneficiary's action on an original life policy against a reinsuring company to recover a personal judgment against the reinsurer, in the absence of a reinsurance policy having been issued to insured, the contract of reinsurance is the foundation of the cause of action, and must be made a part of the complaint in order to authorize a personal judgment against defendant, since its liability rests on the contract of reinsurance. pp. 627, 628.

2. INSURANCE.—*Reinsurance Contract.—Rights of Policy-holder or Beneficiary.*—A reinsurance contract between defendant and the insurer of plaintiff's intestate entered into under §4753 Burns 1914, Acts 1897 p. 318, and made for the benefit of the policy-holders of the latter company, entitles a policy-holder, or in event of his death, his beneficiary to maintain an action on such reinsurance contract. p. 628.

3. INSURANCE. — *Reinsurance. — Action against Reinsurer.—Complaint.—Allegations as to Reinsurance Contract.*—In an action by the beneficiary of a life policy against a reinsurer, in the absence of a reinsurance policy, the complaint must allege directly whether the contract of reinsurance was oral or written, and, if written, a copy thereof must be made part of the complaint. p. 629.

4. INSURANCE.—*Reinsurance.—Liability of Reinsurer.—Rights of Insured.*—Though generally the liability of the reinsurer is solely to the reinsured, it is competent for the reinsurer to make the reinsurance contract inure directly to the benefit of the party originally insured, and in jurisdictions allowing a third party to maintain an action on a contract made for his benefit, he may recover directly from the reinsurer. p. 630.

5. INSURANCE.—*Life Insurance.—Action on Policy.—Complaint.— Allegations of Performance of Conditions.—Sufficiency.*—Where a life policy provided that a failure to furnish proof of the death of insured within one year thereafter should be a conclusive bar to recovery thereon, the insurer's liability did not attach *ipso facto* upon the death of the insured, but depended on the furnishing of such proof by some one on behalf of the insured or his beneficiary, and, in an action on such policy, an allegation in the complaint that insured had performed all the conditions of the policy is insufficient to show that the required proof of death had been furnished. p. 630.

6. INSURANCE.—*Life Insurance. — Contract. — Validity.*—The parties to a life insurance contract had a right to agree that "the company must be furnished at its office in the city of Indianapolis with proof of death," within a year, and that ·a failure to do so should be a conclusive bar to any recovery on the policy, and it was the duty of insured to have informed his beneficiary, or some other person, of the existence of the policy, and of such condition so that the proofs of death could be furnished. p. 632.

7. INSURANCE.—*Life Insurance.—Policy.—Construction.—Condition as to Proof of Death.—Necessity of Compliance.*—Contracts of insurance, when of doubtful meaning or when open to two constructions, are to be construed against the insurance company, but where the contract plainly requires that some one on behalf of insured make proof of insured's death within a stipulated time, nothing less than an act of God will excuse failure to make such proof, and unless such proof is made or waived, the right of action is forfeited where the policy so provides. p. 633.

8. INSURANCE.—*Life Insurance.—Contract.—Failure to Make Proof of Death.*—In a beneficiary's action against a reinsurer on a life policy issued by the original insurer, providing that "the company must be furnished at its office in the city of Indianapolis with proof of death," within one year, the failure of plaintiff to furnish proof of death within the time required by the policy is not sufficiently excused because the reinsurer did not maintain an office in the State of Indiana, to plaintiff's knowledge. p. 634.

9. INSURANCE.—*Life Insurance.—Contract.—Proof of Death.—Failure to Make.*—The instantaneous death of insured would not constitute an act of God, excusing failure to make proof of death within the time stipulated in an insurance policy. p. 634.

10. PLEADING.—*Departure.—What constitutes.*—A reply must support the complaint, and a violation of this rule constitutes a departure which must be attacked by a demurrer. p. 635.

11. INSURANCE.—*Life Insurance.—Action on Policy.—Reply Not Supporting Complaint.—Sufficiency.*—In an action on a policy of

Federal Life Ins. Co. *v.* Barnett, Admx.—71 Ind. App. 613.

life insurance, where the complaint alleged that insured fully performed all the terms and conditions of the policy, and a paragraph of reply admitted that he did not so perform and alleged a waiver of performance, the reply was subject to demurrer on the ground of departure. p. 635.

12. APPEAL.—*Affirmance.—Correct Determination of Cause.—Erroneous Ruling on Demurrer.*—Where upon the whole record the court on appeal is satisfied that a fair trial was had and a correct result reached, the cause will not be reversed because of error in overruling a demurrer or a motion to make more specific. p. 636.

13. INSURANCE.—*Reinsurance.—Consent of Insured in Mutual Company.—Statute.*—The provision of §4753 Burns 1914, Acts 1897 p. 318, that no contract reinsuring the risks of a mutual company can be entered into unless authorized and approved by two-thirds of the policy-holders attending a meeting for that purpose, renders inapplicable, in such cases, the rule that a policy-holder is not bound by a reinsurance contract, because he is not a party to it and is without voice in its making. p. 636.

14. APPEAL.—*Briefs.—Appellant's Recital of Evidence.—Appellee's Failure to Challenge.—Effect.*—Where appellee makes no objection to appellant's recital of the evidence, the court on appeal will accept such recital as correct. p. 637.

15. INSURANCE. — *Life Insurance. — Action on Policy. — Insured's Knowledge of Reinsurance Contract.—Evidence.*—In a beneficiary's action on a life policy against a reinsurer, evidence *held* insufficient to show that insured, at the time he received the reinsurance policy issued to him by the reinsurer, and at all times thereafter, was ignorant of the terms of the reinsurance contract. p. 637.

16. INSURANCE.—*Reinsurance.—Action on Policy.—Failure to Pay Premiums.—Finding of Fact.—Sufficiency of Evidence.*—In a beneficiary's action on a life policy against a reinsurer, evidence *held* insufficient to sustain a finding that insured refused to recognize the reinsurance contract as binding and that his failure to pay premiums was because defendant demanded a premium greatly in excess of the amount charged in the original policy. p. 638.

17. INSURANCE.—*Life Insurance.—Action on Policy.—Failure to Furnish Proof of Death.—Finding of Fact.—Sufficiency of Evidence.*—In a beneficiary's action on a life policy against a reinsurer, where plaintiff had in her possession the policy sued on, the reinsurance policy, and letters to insured, which gave sufficient information to enable her to have furnished proof of death as required by the policy, there was no legal excuse for failure to furnish such proof and the action could not be maintained. p. 647.

From Cass Circuit Court   *J. P. Wason*, Special Judge.

Action by Roxie E. Barnett, administratrix of the estate of George E. Barnett, deceased, against the Federal Life Insurance Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*C. A. Atkinson* and *Long, Yarlott & Souder*, for appellant.

*William L. Barnum, Jr.*, and *Joseph M. Rabb*, for appellee.

McMahan, J.—The Model Life Insurance Company, hereinafter called the Model, organized and doing business on the assessment plan under Acts 1897 p. 318, §4739 *et seq.* Burns 1914, issued a policy of insurance for $2,500 on the life of George E. Barnett, November 7, 1901. This is an action by appellee, as administratrix of his estate, against appellant on said policy. The amended complaint, hereinafter referred to as the complaint, upon which this case was tried, after alleging the incorporation of the Model and the issuance of said policy, a copy of which was attached to and made a part of said complaint by exhibit, alleged: "That the said George E. Barnett in all things fully observed, kept, performed and fulfilled all and singular, the things which were on his part to be observed, performed and fulfilled, according to the conditions, form and effect of said policy of insurance up to and including February 16 A. D. 1908;" that on March 12, 1904, pursuant to a certain transaction between the Model and appellant, the Model transferred to appellant all of its property and outstanding insurance risks, including that upon the life of George E. Barnett and, in consideration of such transaction and transfer, appel-

lant assumed and agreed to perform each and every obligation and promise theretofore made by the Model to its members; that George E. Barnett died on February 16, 1908; that the Model ceased to exist and ceased to have or maintain any office in the city of Indianapolis from and after March 12, 1904; that proof of the death of said insured could not be furnished to the Model as was required by said policy; that appellee in February, 1910, notified appellant of the death of said insured and requested blanks and instructions as to making of proofs of loss under said policy—No. 5299—but that appellant refused to furnish the blanks, and denied that the policy was of any force or validity; that appellant was a nonresident corporation of the State of Indiana at the time of the death of the insured, and, from that time to the bringing of this action, had no office or place of business in Indiana to the knowledge of appellee; that prior to February, 1910, she had no knowledge of the location of appellant's office or place of business, and for that reason was unable to give appellant notice of the death of said insured before February, 1910; that, upon learning the address and place of business of appellant, she promptly notified it of the death of the insured.

Appellant filed a motion to make this complaint more specific by requiring appellee to state whether or not the transaction of March 12, 1904, between the Model and appellant was in writing, and to set forth whether the alleged assumption and agreement by appellant to perform the obligations of the Model was in writing, and, if in writing, to set out the terms and conditions of such assumption. This motion being overruled, appellant filed its demurrer for want

of facts. The grounds specified in the memorandum being: (1) That the complaint does not state the facts concerning the transfer to appellant; the nature, extent and character of the consideration for such transfer, assumption and agreement, but mere legal conclusions; (2) that no proof of the death of the insured was furnished within one year after the death of the insured as required by the policy sued on, and that the complaint failed to show performance by the appellee of the conditions precedent to entitle her to maintain this action.

The demurrer being overruled, appellant filed an answer in five paragraphs, the first of which was a general denial.

The second admitted that appellee was the administratrix of the estate of the insured; that appellant was a corporation organized and existing under the laws of the State of Illinois, and engaged in life insurance business; that on November 7, 1901, and continuously to March 12, 1904, the Model was a mutual life insurance company; that on November 7, 1901, George E. Barnett became a member of said Model, on which date the Model issued to him a policy of insurance for $2,500 for an annual premium of $90.35, and that it believed that the copy attached to the complaint was a correct copy of the policy, but it denied that the insured fulfilled the obligations on his part according to the terms of the policy. It also alleged that on March 12, 1904, the Model and appellant entered into a written contract of reinsurance under the terms of which appellant reinsured the policies of the Model then outstanding on the lives of the then living policy-holders, and that the obligations assumed by appellant as to said policies and

policy-holders were assumed subject to and in accordance with the terms of said reinsurance contract and not otherwise; that the policy sued on was one of the policies so reinsured by appellant; that, under and pursuant to the terms of said reinsurance contract, appellant issued and delivered to said Barnett its reinsurance policy dated March 12, 1904, which reinsurance policy was in March, 1904, received, accepted and retained by said Barnett, and which reinsurance policy became, and was, a part of the contract of insurance between the appellant and the insured.

After admitting that the insured, George E. Barnett, died on February 16, 1908, it alleged that the president and the secretary of the Model at the time when the policy sued on was issued continued to be such president and secretary from that time to March 12, 1904, and that no persons were elected by said Model to succeed such persons subsequently to said date; that, when said policy was issued both the president and the secretary resided in the city of Indianapolis, and continued to reside therein up to and subsequently to 1910; that they continued as president and secretary of the Model after March 12, 1904, for the purpose of service of summons and notice and for the purpose of having proofs of death furnished to said Model; that appellee never made any attempt to ascertain the whereabouts of the president and the secretary, or either of them, and never made any attempt or offer to furnish proofs of the death of said insured to said Model or to appellant for more than one year after the death of said insured; that appellant had an office in the business part of the city of Indianapolis continuously from March, 1904, to 1912.

That the policy sued on provided, among other things, as follows:

> "Within one year after the death of the insured, the company must be furnished at its office in the City of Indianapolis with proof of death which shall comprise satisfactory statements establishing the validity of the claim, and said lapse of time before filing such proof shall be a conclusive bar to any recovery hereon."

That no notice was ever given to the Model of the death of the insured, and that no notice of his death was given to appellant until more than two years after his death; that appellee by reasonable diligence could have located and ascertained the address in Indianapolis of the president and the secretary of the Model prior to the expiration of one year from the death of the insured, but that she made no attempt to do so, or to notify the Model of said death; that appellee had knowledge of the reinsurance policy issued by appellant to the insured within one year from the death of the insured, and that the said reinsurance policy showed on its face the location and post office address of appellant; that the annual premium on said policy became due and payable November 7, 1904, and that it was not paid, by reason of which said policy lapsed.

A copy of the reinsurance contract between appellant and the Model, and a copy of the reinsurance policy issued by appellant to the insured were attached to and made a part of this paragraph of answer. The third and fourth paragraphs of answer were stricken out on motion of appellee and are therefore omitted. Appellee filed a reply in two para-

graphs. The first paragraph admits that the Model and the appellant entered into the written contract as alleged in appellant's answer, and alleges that said contract was entered into by said companies without the knowledge or consent of the insured; that, when so entered into, the Model was in possession of cash, bonds and notes of the aggregate value of $50,000, held by it for the benefit of its policyholders; that the annual premium charged by appellant of a person the age of insured for a policy like the one issued to him by the Model was greatly in excess of what he was required to pay the Model and that, by the terms of said reinsurance contract, the appellant was privileged to charge against the policy held by the insured the same annual premium charged by it against like policies issued by it, and also to charge a large sum to constitute a reserve fund, which should be deducted from any amount due the beneficiary on the death of the insured; that said insured had no knowledge of the said provisions and did not consent thereto; that the Model prior to November, 1904, delivered all of its assets to appellant, abandoned its office in the city of Indianapolis, denuded itself of all means to meet these obligations, ceased to transact business, and never thereafter maintained an office where the insured could have paid the premiums due on its policy or where proof of death could be made as provided in the policy sued on; that the insured complied with all the conditions of the policy so long as the Model continued to do business and to receive premiums and did not thereafter pay any premiums on said policy to the Model for the reason that it had abandoned its contract and made no provisions for receipt of premiums or the

payment of benefits to those entitled thereto by the terms of its policies. It is also alleged that, after the Model and appellant entered into the said reinsurance contract, the appellant claimed and asserted that its liability to the policy-holders of the Model was governed entirely by said contract, and that it had the right to charge the policy-holders of the Model premiums as provided for in said contract, and to charge and assess said policies with liens as therein provided, and demanded that the insured pay such additional premiums and consent to such additional assessments and liens, on penalty of the forfeiture of his policy; that the insured refused to comply with such demands, whereupon appellant declared said policy forfeited and denied all liability thereunder; that said insured was at all times ready, willing and able to pay the premiums and assessments due on said policy according to its terms; that appellee and the children of decedent, who were alleged to be under twenty-one years of age, were inexperienced in business matters and knew nothing about the Model and appellant or about the contract of reinsurance until about February 1, 1910; that the only provision in said contract of reinsurance regarding the notice of the death of the insured provided that such proofs should be furnished on forms in use by the appellant; that, as soon as she learned about the facts concerning said policy and contract, she wrote appellant informing it of the death of the insured and requesting blanks on which to make proof of the death of insured; that appellant thereupon denied all liability on the policy mentioned in the complaint, and thereby waived proof of death; that both the appellant and the Model waived the payment of the pre-

miums due on said policy November 7, 1904, and subsequently thereto.

The cause was tried by the court, and at the request of the parties the facts were found specially. The facts so found are in substance as follows: 1. That the Model on and prior to November 7, 1901, was a corporation organized under the laws of Indiana for the purpose of engaging in life insurance business as a mutual company. 2. That on March 12, 1904, appellant was a corporation organized under the laws of Illinois, and was then and still is authorized to engage in life insurance in this state. 3. On November 7, 1901, said Model issued to George E. Barnett a policy for $2,500 at an annual premium of $90.35 payable at the office of the company or its authorized agent who might produce a receipt signed by the president and secretary of said company, said policy being numbered 1546, and being set out in full. 4. On March 12, 1904, said Model without the consent of the insured entered into a written contract with appellant whereby said Model transferred all of its assets to appellant and abandoned its office in the city of Indianapolis, and since said time has maintained no office nor transacted any business; that, by reason of said contract with the appellant, the Model deprived itself of its power and ability to carry out said contract of insurance with the insured, which facts were known to appellant. 5. For this finding the court set out a copy of the reinsurance contract between appellant and the Model. 6. At the time said reinsurance contract was entered into, the Model owned and possessed assets which it held in trust for its policyholders to the value of $43,000, which were delivered by it to appellant under said contract,

7. After the making of said contract, and in consideration thereof, appellant issued to said Barnett its certificate of reinsurance, which reads in part as follows:

"Incorporated Under the Laws of Illinois
Federal Life Insurance Company.
Number 5299                               Amount
                                          $5000.

Chicago.

"This Policy of Reinsurance Is Issued To George E. Barnett of Logansport, County of Cass, State of Indiana, to be attached to Certificate or Policy No. 1546, of the Model Life Insurance Company of Indiana, and subject to all the provisions of the contract of reinsurance between said The Model Life Insurance Company and this Company, dated March 12, 1904, constitutes Policy No. 5299 of the
Federal Life Insurance Company
of Chicago, Illinois."

Said certificate was received by appellee's intestate and retained by him up to the time of his death. This policy, except as above stated, is identical in form with the reinsurance policy copied in *Federal Life Ins. Co.* v. *Kerr* (1910), 173 Ind. 613, 89 N. E. 398, 91 N. E. 230. 8. When said Barnett received said certificate so issued by appellant, and at all times thereafter, he was ignorant of the terms of said contract entered into between the Model and appellant. 9. That said Barnett paid all premiums due from him to the Model so long as the Model continued to do business or to maintain an office in the city of Indianapolis or to

have agents who were authorized to receive and receipt for premiums as provided in the policy. 10. That the annual premium charged by appellant for a policy of the same amount and character as that held by Barnett in the Model, upon policies issued by appellant to its patrons, was greatly in excess of the premium Barnett contracted to pay the Model for the policy sued on and, by the terms of said reinsurance contract, the appellant was privileged to charge policyholders in the Model the same premium for carrying their insurance as was charged by appellant upon policies originally issued by it, and, in addition thereto, to charge against the Model policies a large sum to constitute a reserve fund upon which interest should be charged and which should be deducted from any amount due the beneficiary on the death of the insured; that said insured did not consent to said condition and had no knowledge thereof until after said contract was entered into; that appellant claimed of said insured that the extent of its liability was measured by said reinsurance contract, and claimed the right to charge his policy with the liens therein provided and demanded that said insured pay such additional premiums on the penalty of forfeiting his policy; that the insured refused to comply with said demand or recognize the reinsurance contract as binding upon him, whereupon the appellant declared said policy lapsed and forfeited; that neither the insured nor any person in his behalf thereafter paid or tendered to the appellant or to the Model any sum whatever as premiums on said policy, and that he died intestate on February 16, 1908, and left an estate of the probable value of $5,000 with an indebtedness of about $1,000; that he left appellee, his widow, and

three infant children not under guardianship and incapable of comprehending the nature of the contract of insurance or of the rights of the insured or his beneficiaries therein; that plaintiff had no means at the time of the death of the insured of knowing the terms of said reinsurance contract, or the legal rights of the insured and his beneficiaries, and the liability of appellant; that, within thirty days from the time she became informed of the facts of the legal liability of appellant, she gave the appellant notice in writing of the death of the insured, and her claim against appellant for the amount due on the policy issued by the Model; that said notice was received by the appellant, and that it denied all liability on said policy on the sole ground that the insured had allowed said policy to lapse by failure to pay the premiums due thereon after November 7, 1903.

The court thereupon stated its conclusions of law in favor of appellee, to each of which appellant excepted, and thereafter filed its motion for a new trial. The specifications stated in the motion being that the decision of the court is (1) not sustained by sufficient evidence, (2) is contrary to law; that the court erred (3) in admitting and (4) in excluding certain evidence.

Appellant filed a motion in arrest of judgment, which was overruled, and judgment was rendered for appellee for $2,138.60 with interest from November 15, 1910, that being the amount of the policy less the unpaid premiums amounting to $301.40.

The errors relied upon for reversal are: (1) The overruling of the motion to make the complaint more specific; (2) overruling demurrer to complaint; (3, 4) the sustaining of appellee's motion to strike

out and in striking out the third and fourth paragraphs of appellant's answer; (5) overruling appellant's motion to strike out parts of the first paragraph of reply; (6) overruling demurrer to first paragraph of reply; (9) in overruling appellant's motion to set aside former ruling overruling demurrer to complaint; (10) in overruling appellants' motion asking the court to find the facts and law to be in favor of appellant, and to render judgment accordingly; (11) that the court erred in each of its conclusions of law; (12) in overruling a motion for a new trial; and (13) in overruling the motion in arrest of judgment.

In considering the questions involved in this appeal as they relate to the pleadings, it is necessary that we keep in mind that this is an action to

1. recover a personal judgment against the appellant on a policy issued by the Model, and where there was a written contract of reinsurance executed by the Model and appellant, and where neither the reinsurance contract nor the reinsurance policy issued by the appellant is made a part of the complaint, as was done in *Federal Life Ins. Co.* v. *Petty* (1912), 177 Ind. 256, 97 N. E. 1011, and *Federal Life Ins. Co.* v. *Kerr, supra.* The first contention of appellant is that the court erred in overruling its motion to make the complaint more specific. The only attempt to connect the appellant with the policy sued on is in that part of the complaint where it is alleged that pursuant to a certain transaction between the Model and the appellant, by which the Model transferred to the appellant all of its property, assets and members and, in consideration of such transfer, the appellant assumed and agreed to perform every ob-

ligation theretofore made by the Model to its members.

The contract between the appellant and the Model was entered into under §4753 Burns 1914, Acts 1897 p. 318, and, having been made for the benefit of the policyholders of the Model, such policyholder, or, in case of his death, his beneficiary may maintain an action on such reinsurance contract against appellant.

2.

In the absence of the reinsurance policy being issued by appellant to the insured, as was alleged in the Petty and Kerr cases, *supra,* the contract of reinsurance is the foundation of the cause of action and must be made a part of the complaint in order to authorize a personal judgment against the appellant. Appellants' liability rests on the contract of assumption or reinsurance. *Spande v. Western Life Indemnity Co.* (1912), 61 Ore. 220, 117 Pac. 973, 122 Pac. 38. Appellee contends that the complaint is founded on the policy of insurance issued by the Model, and not on the contract of reinsurance between appellant and the Model, and cites *Federal Life Ins. Co. v. Kerr, supra; Federal Life Ins. Co. v. Petty, supra; Federal Life Ins. Co. v. Arnold* (1910), 46 Ind. App. 114, 90 N. E. 493, 91 N. E. 357; *Federal Life Ins. Co. v. Risinger* (1910), 46 Ind. App. 146, 91 N. E. 533; *Federal Life Ins. Co. v. Maxam* (1919), 70 Ind. App. 266, 117 N. E. 801, 118 N. E. 839, and *Federal Life Ins. Co. v. Weedon, Admr.* (1918), 68 Ind. App. 529, 118 N. E. 842, as being decisive upon this and other questions involved in this appeal. In each of the cases cited by appellee the reinsurance policy issued by appellant was made part of the complaint, and the court in each of those cases held that when

1.

that was done it was not necessary to make the contract of reinsurance a part of the complaint. We are not questioning the correctness of those decisions. We simply hold that they are not applicable to the question now under consideration. *McDill* v. *Gunn* (1873), 43 Ind. 315; *Helms* v. *Kearns* (1872), 40 Ind. 124. In the absence of the reinsurance contract there can be no recovery. There must be an agreement of some kind before appellant can be held personally liable. *Bateman* v. *Butler* (1890), 124 Ind. 223, 24 N. E. 989; *State, ex rel.* v. *Kelso* (1884), 94 Ind. 587; *Rodenbarger* v. *Bramblett* (1881), 78 Ind. 213; *Southern, etc., Sav. Inst.* v. *Roberts* (1908), 42 Ind. App. 653, 86 N. E. 490.

In *Risk* v. *Hoffman* (1879), 69 Ind. 137, Risk purchased a tract of land and, as part of the purchase price, assumed the payment of a certain note and mortgage held by Hoffman. Hoffman sued Risk for the amount due on the mortgage. The court in the course of its opinion said: "The agreement of Risk to pay off the mortgage on the land is the foundation of this action."

In *Davis* v. *Hardy* (1881), 76 Ind. 272, the court said: " 'No one save Edwards, who it is alleged, assumed the payment of the note, was liable. He was not liable on the note and mortgage, but on his promise to pay the debt.' " So in the instant case we must look elsewhere than to the Model policy for the liability of appellant. We must, in the absence of a reinsurance policy having been issued by appellant to George E. Barnett, look to the reinsurance contract between the Model and appellant. This was recognized by appellee in her complaint, but, instead of directly alleging that the contract of reinsurance was oral or written, so worded

her complaint as to leave the presumption that the contract was oral. The appellant had the right to know whether appellee was seeking to recover on an oral or on a written contract, and, if on a written contract, to have a copy of the same made a part of the complaint.

While "as a general rule the liability of the reinsurer is solely to the reinsured, * * * it is competent * * * for the reinsurer to make the reinsurance contract inure directly to the benefit of the party originally insured, and in jurisdictions where a third party is allowed to maintain an action on a contract made for his benefit, he may, in such case, recover directly from the reinsurer." 24 Am. and Eng. Ency. Law (2d ed.) 258; *Ruohs* v. *Insurance Co.* (1903), 111 Tenn. 405, 78 S. W. 85, 102 Am. St. 790; *Spande* v. *Western Life Indemnity Co.*, *supra.*

It was error to overrule the motion to make the complaint more specific.

The appellant contends that the court erred in overruling its demurrer to the complaint. The first contention is that the complaint shows that proof of death was not furnished within one year after the death of the insured as was required by the policy of insurance. The policy provided that a failure to furnish proof of the death of the insured to the Model at its office in the city of Indianapolis within one year after the death of the insured should be a conclusive bar to any recovery thereon. The liability of appellant to pay the amount named in the policy of insurance did not attach *ipso facto* upon the death of the insured. It depended upon the performance by some one on behalf

of the insured or his beneficiary of a condition precedent, namely to furnish proof of death within one year as provided in the policy. *Supreme Lodge, etc.* **v.** *Meister* (1897), 78 Ill. App. 649. Conditions in a life insurance policy as to the time within which proof of death must be furnished must be complied with. In the case of *Indiana Ins. Co.* v. *Capehart* (1886), 108 Ind. 270, 8 N. E. 285, the court, among other things, said: ''Furnishing the proofs stipulated for in the policy, was a condition precedent to the plaintiff's right of recovery. The claim for loss was not due until sixty days after such proof was furnished. It was therefore essential to the sufficiency of the complaint that the plaintiff should affirmatively show a performance of the conditions upon which the claim matured, or that a performance had been waived.'' See, also, *Hanover Fire Ins. Co.* v. *Johnson* (1901), 26 Ind. App. 122, 57 N. E. 277; *Forest City Ins. Co.* v. *School Directors* (1879), 4 Ill. App. 145; *Home Ins. Co.* v. *Lindsey* (1875), 26 Ohio 348; *Harrigan* v. *Home Life Ins. Co.* (1900), 128 Cal. 531, 548, 58 Pac. 180, 61 Pac. 99; *Trippe* v. *Provident Fund Society* (1893), 3 Misc. Rep. 445, 23 N. Y. Supp. 173; *Larkin* v. *Modern Woodmen, etc.* (1910), 163 Mich. 670, 127 N. W. 786; *Patton* v. *Employers', etc., Assur. Co.* (1887), 20 L. R. Ir. 93.

It is true, as appellee contends, that the complaint alleges specifically that the insured performed all the conditions which by the terms of the policy he was required to perform. But that falls far short of alleging proof of death, which could only be performed by appellee or some other person after the death of the insured.

Appellee also contends that the complaint states

facts that excused her from presenting proof of death as required by the policy, and cites *Federal Life Ins. Co.* v. *Petty, supra,* in support of this proposition. That case, however, lends appellee no assistance. The appellant in the case just cited set up by way of answer that no proof of death had been furnished the Model as required by the terms of the policy. The court, in discussing the sufficiency of the answer, said: ''If it were conceded that appellant's liability was limited by the provisions of the reinsurance contract, it is clear that it was not contemplated by the terms thereof that proof of death of the insured should, after the execution of the reinsurance contract, be furnished the Model company. * * * Under the very terms of the contract, if a duplicate copy of the proof of death had been mailed to the Model company, it would have been received and retained by appellant. The law does not require a party to do a useless act.'' It may be said that, inasmuch as the reinsurance contract is not made a part of the complaint in the instant case, the quotation from the Petty case is not in point. It does, however, emphasize the necessity of requiring such contract, or the terms and conditions thereof, to be stated in the complaint, and the error of the court in overruling the motion to make the complaint more specific.

The particular allegations in the complaint bearing upon the failure to furnish proof of death are: (1) That the Model ceased to exist and ceased to maintain an office in the city of Indianapolis, and proof could not be furnished it; (2) that appellant was a nonresident corporation, and at the time of the death of the insured and, from that time

to the commencement of this action, had no office or place of business in this state to appellee's knowledge, and for that reason she was unable to furnish it with proof of death prior to February, 1910. When the insured, George E. Barnett, entered into the contract of insurance with the Model, he, for himself, and on behalf of his beneficiary, his estate, agreed that within one year after his death "the company must be furnished at its office in the city of Indianapolis with proof of death," and that a failure to furnish such proof within that time should be a conclusive bar to any recovery on the policy. The parties had a right to enter into this kind of a contract, and, having done so, their rights and liabilities are measured by it. The insured, when he entered into this contract, knew that it would be impossible for him to furnish the company with proof of his own death, and knew that such proof must from necessity be furnished by another person after his death. With this knowledge it was his duty to have informed his wife, or some other person, of the existence of this policy and of this particular condition, in order that the proofs of death could be furnished, and if he failed to take this precaution and a loss to his estate results, he, and not the appellant, is to blame. The loss, if any, resulting from such neglect is his loss, or rather his estate's loss.

Contracts of insurance, when of doubtful meaning or when open to two constructions, are, as suggested by appellee, to be construed against the insurance company, but when such contracts are not of doubtful meaning and capable of but one construction, then upon the theory that even an insurance company is to be treated and dealt with hon-

estly we will give the language in such contracts the same construction as if it were used in a contract where an insurance company was not a party. Bacon, in discussing the proof of death, says, ''Nothing less than an act of God will excuse performance.'' 2 Bacon, Life and Acc. Ins. §578. ''A failure to furnish proofs of loss within the time required by an insurance policy bars an action thereon unless waived, where the policy further provides that such failure shall work a forfeiture of such right of action. 2 Beach, Law of Ins. §1210; *Gould* v. *Insurance Co.* (1892), 90 Mich. 302, 51 N. W. 455. To the same effect, 4 Cooley, Laws of Ins. 3351; *Shafer* v. *U. S. Casualty Co.* (1916), 90 Wash. 687, 156 Pac. 861.

The only other allegation in the complaint as to why proof of death was not furnished appellant until more than two years after the death of the insured was that appellant did not maintain an office in the State of Indiana to appellee's knowledge. This was not a sufficient excuse for failure to give notice. In *Patton* v. *Employers', etc., Assur. Co., supra,* the court, in quoting from *Gamble* v. *Accident Ins. Co.* (1870), 4 Ir. C. L. 204, said: '' 'Although a man cannot serve a notice after he has ceased to live, it is perfectly practicable for him so to arrange that what is required by the company shall be done by a survivor.' '' It was there urged that the condition requiring notice was discharged by an act of God. In answering this argument, the court said: '' 'That objection is answered by the contract itself. If the contract was, as I conceive it was, that the required notice should be given by some one, the instantaneous death of the insured did not render it impossible to do what the

condition required, since it could have been done by a survivor.' The averment, in the summons and plaint, that no other person having knowledge or notice of the contract, had, within the specified time, knowledge or notice of the occurrence, or could give notice thereof, only shows, * * * 'that the insured did not take the necessary means of enabling someone who was likely to survive him, if he should meet immediate death by a sudden accident, to give the necessary notice by apprizing some of his family or friends of the policy and of the strict condition contained in it. The dispensation of Providence in his instantaneous death would not have occasioned the omission to give the necessary notice, but for his own neglect in not providing for that contingency.' " The demurrer to the complaint should have been sustained, on account of the failure to show that proof of death was furnished within the time required by the terms of the policy.

Appellant insists that the court erred in overruling its demurrer to the first paragraph of reply on the ground of departure. It is well settled that the reply must support the complaint. A violation of this rule is termed a departure, and takes place when the plaintiff deserts the cause of action stated in the complaint and resorts to another. A departure must be taken advantage of by a demurrer. 1 Watson, Practice and Forms §763. The cause of action alleged in the complaint is grounded on the allegations that the insured fully performed all the terms and conditions of the policy as required of him. The reply deserts that position, and admits that he did not so perform and alleges a waiver of performance. On the authority of *Mid-*

*land Steel Co.* v. *Citizens Nat. Bank* (1901), 26 Ind. App. 71, 59 N. E. 211, and *Hanover Fire Ins. Co.* v. *Johnson, supra,* we hold that the first paragraph of reply was subject to demurrer on the ground of departure.

Complaint also is made of the action of the court in refusing to vacate its ruling on the demurrer, in sustaining appellee's motion to strike out the third and fourth paragraphs of answer, in permitting appellee to amend the first paragraph of reply, and in overruling a motion to strike out parts of said paragraph of reply. We have considered each of these complaints, and hold that the rulings of the court relative thereto, if erroneous, were harmless, and call for no extended discussion. As to the effect of an error in overruling a demurrer to the complaint or other pleadings, and in overruling motions addressed to the pleadings, when upon the whole record it is disclosed that a correct result has been reached, see *Volker* v. *State, ex rel.* (1912), 177 Ind. 159, 97 N. E. 422, and *Vulcan Iron, etc., Co.* v. *Electro, etc., Min. Co.* (1913), 54 Ind. App. 28, 99 N. E. 429, 100 N. E. 307. If upon the whole record we were satisfied that a fair trial was had, and a correct result reached, we would not reverse this cause because of error in overruling a demurrer or a motion to make more specific.

The next question is whether the decision of the court (finding of facts) is sustained by sufficient evidence. In considering the finding of facts and the evidence, it might be well for us to bear in mind that the Model Life Insurance Company was a mutual company owned and controlled by its policyholders. No contract of reinsurance under

§4753. Burns 1914, *supra,* could have been entered into between appellant and the Model until such contract was authorized and approved by two-thirds of the policyholders attending a meeting called for that purpose. The act of the Model in entering into the contract of reinsurance with appellant was therefore in a sense the act of its policyholders. It has been held in many cases that the policyholder is not bound by a contract of reinsurance, for the reason that he is not a party to it and had no voice in its making. An examination of the cases in which this rule is stated will disclose that the reinsuring companies were stock and not mutual companies. Our judgment is that the rule should not be applied with all its strictness in a case like the one now under consideration, where the contract cannot be entered into without the approval of the policyholders.

Appellant challenges the statement in the eighth finding that the insured, at the time when he received the reinsurance policy issued to him by appellant and all times thereafter, was ignorant of the terms of the reinsurance contract. Appellee makes no objection to appellant's recital of the evidence. We will therefore accept this recital as correct. There is no evidence as to whether the insured did or did not attend the meeting of the policyholders of the Model when the reinsurance contract was submitted to them for approval, or whether he ever saw, or did not see, the contract, or a copy of the same, before it was approved by the policyholders. The only evidence that throws any light upon his knowledge or want of knowledge of this contract is contained in a letter from the insured

to appellant dated November 4, 1904, in which the insured said:

> "The premium on my policy 5299 is due Nov. 7th. and I am sorry to say that the money that I expected to pay it with I am disappointed in getting although I may get it inside of 30 days if that will do, if not I will have to pass it up. How much of a paid-up policy am I entitled to as I have already paid up 3 yrs. If I continue to pay what premium will I have to pay in the future? The understanding that I had from the agt. of the Model Life was that the policy would be paid for in about 8 or 10 yrs. and from that time on I should receive a dividend each year on the earnings. I gave a note for the reserve that I understood was to be returned to me at the expiration of either 3 or 5 yrs. I think although my memory on that is not clear on just the time. I should like very much to hear all regarding the matter at your earliest convenience and oblige."

While this might be considered as some evidence that he did not know the exact amount of the premium he was required to pay at the date the letter was written, it is certainly no evidence that he did not thereafter and long before his death learn all about the terms of the contract, and in fact he might have known of its terms prior thereto and have forgotten the same, or not have had them in mind when he wrote this letter.

Appellant also insists that the tenth finding is not supported by the evidence. By this finding the court found that the insured did not consent to the conditions of the contract in relation to the payment of premiums, and had no knowledge

thereof until after the contract was entered into; that appellant claimed to the insured that the extent of its liability was measured by the reinsurance contract, and that appellant demanded of the insured the payment of premiums greatly in excess of what he was required to pay under the terms of the Model policy, on penalty of forfeiture of his policy; that the insured refused to comply with such demand, or to recognize the reinsurance contract as binding upon him, and that appellant thereupon declared the policy forfeited. In the eleventh finding the court found that no premiums were "thereafter" tendered or paid to appellant on said policy, and that the insured died on February 16, 1908. There is no specific finding as to when appellant made the demand, as found by the court, other than that it was "after the making of the said contract between said companies." There are no facts found from which we can determine whether the insured, prior to said demand, paid any premiums to the appellant or not. The court found that he paid all premiums to the Model as long as the Model continued to do business or to maintain an office in the city of Indianapolis, or maintain agents, and that, after appellant made the demand, as found by the court, no further premiums were paid on account of the policy, but the date of the demand as found by the court is not given. Appellant and appellee on oral argument and in their respective briefs have assumed that it is found as a fact that the appellant made this alleged demand, and that the refusal of the insured to pay any premium to appellant was in November, 1904, as each of them state that the court found that no premium was ever paid on the policy after the one payable November 7, 1903. Adopt-

ing this as the correct construction to be given to the special finding of facts, what is the evidence bearing upon the question of demand and refusal?

The only evidence upon this question is to be found in certain letters, the first of which is the one written by the insured to the appellant under date of November 4, 1904, hereinbefore set out. The others are three letters written by appellant to the insured, and dated November 8, November 22, and December 8, 1914, and are as follows:

"Nov. 8, 1904.

"Mr. George E. Barnett,
Logansport, Ind.

Re-Federal Policy 5299,—
Model No. 1546.

"Dear Sir: The premium on your policy falls due on November the 7th as you said. If paid any time previous to December 7, it will be entirely satisfactory. If you are unable to pay the full premium in cash at that time, please write us a few days before the end of November making a remittance of a substantial part of the premium in cash and we will let you sign notes due in 60 days and four months after covering the remainder  *  *  *  The policy in question has no paid-up value at this time, for the reason that it was issued by an assessment life insurance company which did not accumulate the proper reserves in cash.  *  *  *  For the present you may continue paying the same premium which you paid to the Model Life, but you must understand that the assessment clause in your policy is absolutely waived and eliminated by the Federal, and the maximum premium you could be

required to pay would be $187.50 annually; $97.50 if paid semi-annually, and $49.70 if paid quarterly. The difference between this premium and the premium you paid will be charged against your policy. An amount equal to that you have been paying will be charged against the note which you say you deposited. This will be done for two more years, you having paid three annual payments on your policy. This note, of course, represents a reserve which you should have paid, but in view of the fact that you have not paid it, it seems a proper charge against the policy and will be deducted from any settlement made under the policy in the future, unless you should see fit to pay it off in cash at some time.''

"Nov. 22, 1904.

"Mr. George E. Barnett,

Logansport, Indiana.

"Dear Sir: I have your esteemed favor of the 21st inst. regarding your policy 5299.

"I beg to advise you that at the time you applied for insurance in the Model Life you signed a note for $451.75, being the amount of one-half your annual premium for five years. This stands a lien against your policy bearing 5% interest. The amount you have been paying the past three years $90.35 was the other half of the annual premium which you stipulated by your application to pay in cash. Up to this time you have lived up to the letter and spirit of your application. The records of the Model Life show your annual premium to be $180.70; just $6.80 less than the Federal Life premium, therefore, this

note which you have signed for one-half the premium would be deducted from the amount of your policy should it become a claim. You are privileged, however, to pay this indebtedness in cash and continue your insurance from this date by paying the regular Federal Life premium of $187.50 annually, or $97.50 semi-annually or $49.70 quarterly. Or you can continue paying the interest on this note as each premium falls due together with the half of the premium as you have been paying which amounts to $112.94. In order to give you the exact condition, we might say the half annual premium is $90.35 and $112.94 is the interest on the five year note which you signed at the time application was made. From this $112.94 there is to be deducted a credit of $16.40; being the pro rata amount due you on account of the cash and assets transferred from the Model Life to the Federal Life at the time we took that company over. This credit will extend over a period of five years at which time it will exhaust. I trust I have made the matter clear to you, but if I have not I will gladly explain any point that you do not fully understand.

"You are now insured in an 'old line' legal reserve Company, one that will safely regard your interest and treat you with the utmost fairness and equity.

"Hoping this explanation is entirely satisfactory to you, I am        Respectfully,

"W. E. Brimstin, Asst. Secretary."

Appellant's letter of December 8, 1904, in so far as material, is as follows:

"Re Policy 5299 Model 1546.

"Dear Sir: The premium on your policy was due the 7th ult. and remains unpaid, although more than thirty days have elapsed.

"Should you prefer to pay the premium semi-annually or quarterly, let us know and we will inform you the amount of same.

"Please forward with your remittance the enclosed application for re-instatement duly executed by you.

"At maturity a life insurance policy is immediately convertible into cash. This cannot be done with any other assets as a general rule. * * * We respectfully but earnestly urge you to remit at once the premium together with the enclosed health certificate or application for re-instatement duly executed. The application being satisfactory the remittance will be accepted the same as if it had been received when the above premium was due * * *. I hope you will give this matter your immediate attention in the interest of both yourself and your beneficiary.

"By C. A. Atkinson,
"Second Vice President."

There is some confusion in the evidence relative to the amount of the policy issued to the insured. In the letter written by Mr. Barnett under date of November 4, 1904, he refers to his policy No. 5,299, and mentions a note which he says he gave the Model. This note is also referred to in appellant's letter of November 8, and more fully explained in the letter of November 22, in which it is stated that at the time Mr.

Barnett applied for insurance in the Model he signed a note for $451.75, being the amount of one-half of the annual premiums for five years. A list of the policies carried by the Model company and reinsured by the appellant was attached to, and made a part of, the contract of reinsurance. The policies were described in this list merely by number and amount. One of the policies therein listed was No. 1,546 for $5,000. Following the execution of this contract appellant, under date of March 12, 1904, issued to the insured its policy No. 5299 for $5,000, which was to be attached to policy No. 1,546 of the Model Life Insurance Company, of Indiana, and constitute policy No. 5,299 of the appellant, a copy of which is set out in finding No. 7 of the court. This reinsurance policy was received by the insured, and after his death was found pinned to the Model policy.

It appears from all of the letters above quoted that George E. Barnett and the appellant, when writing said letters, had in mind appellant's policy No. 5,299 calling for $5,000, and not the policy sued upon, which called for $2,500. This is clear from the statement in Mr. Barnett's letter of November 4, in which he said:

"The premium on my policy 5299 is due November 7th, and I am sorry to say that the money. I expected to pay it with I am disappointed in getting, although I may get it inside of thirty days if that will do, if not, I will have to pass it up."

There is no evidence in the record other than that contained in these letters relating to the note mentioned in them or in anywise explaining the difference in the amount of the Model policy No. 1,546 and

the amount of policy No. 5,299 issued by appellant. The condition of the evidence relating to this note calling for $451.75, and the difference in the amount of the two policies, were called to the attention of counsel on the oral argument in this case. It was there stated by counsel for appellant that two policies dated November 7, 1901, each numbered 1,546, and each calling for $2,500, was issued to the insured, George E. Barnett; that at the time said policies were issued he executed to the Model company his note for five years' premiums upon one of said policies, and that on the other policy he paid cash, while counsel for appellee stated that he knew nothing about the note or the second policy. Appellee contends on this appeal that appellant in its letter of November 22, 1904, made a demand upon the insured for the payment of $97.15 per annum in addition to the premium which the Model required him to pay. In the letter from appellant to the insured of November 22, we find the statement that the note for $451.75 was one-half of the annual premium for five years, and that $90.35 was the other one-half of the annual premium which the insured had stipulated in his application to pay in cash. Relative to its premiums to be paid by the insured, this letter continued:

"You can continue paying the interest on this note as each premium falls due together with the one-half of the premium as you have been paying which amounts to $112.94. In order to give you the exact condition we might say that the one-half annual premium is $90.35 and the difference between the $90.35 and $112.94 is the interest on the five year note which you signed at the time

the application was made. From this $112.94 there is to be deducted an aggregate of $16.40 being the pro rata amount due you on account of the cash and assets transferred from the Model Life to the Federal at the time we took this company over.''

The annual interest on $451.75 at five per cent. is $22.59. This, when added to the annual premium of $90.35, makes $112.94, which was the amount he was required to pay as stated in this letter. At the time the reinsurance contract was entered into, the Model had assets in the way of cash notes and bonds aggregating $43,000, which under the law belonged to the policyholders and, which, according to the letter of November 22, was being prorated among the said policyholders, and Mr. Barnett was to be given a credit of $16.40 on the amount due from him to the Federal on account of the cash premium and the annual interest on his note.

There is no claim or contention on behalf of appellee that her husband at any time paid or tendered any premium to either the Model or to the appellant subsequently to the premium due November 7, 1903. There is no evidence or finding that Mr. Barnett was able, ready and willing to perform the contract and make the payments as required by the terms of the policy. Appellee evidently believed that it was necessary as a matter of pleading to allege in her reply that he was able, ready and willing to perform, and on leave of court amended her reply by inserting an allegation to that effect. No evidence was introduced upon that subject other than what may be inferred from the letter written by Mr. Barnett to appellant under date of November 4, 1907, hereinbefore set out,

in which he stated that he was disappointed in not getting the money with which he expected to pay his premium, and if he did not get it within thirty days he would have to "pass it up." In view of these letters, and the statement of Mr. Barnett that he would have to "pass it up" if he did not get the money he was expecting, we are unable to understand how the court could find that the failure to pay the premiums was because of a demand on the part of appellant for a premium "greatly in excess" of the amount charged by the Model. We have carefully searched the record, and are unable to find any evidence to support the finding that the insured refused to recognize the reinsurance contract as binding. We hold that there is no evidence to support the finding of the court that the appellant demanded an excessive premium from the insured, and that he refused to pay the premiums because of such demand. It is clear from his letter that he was willing to pay and would have paid, if he had had the means with which to do so. The court in the tenth finding stated that the appellee had no means at the time of the death of the insured of knowing the terms of the reinsurance contract, or the legal right of the insured or his beneficiaries.

As bearing upon this finding, and also upon appellant's excuse or inability to furnish proof of death, appellee testified that she knew that her husband took out the Model policy at the time he got it; that she made no effort between the date of his death in 1908 and February, 1910, to ascertain whether he had any insurance or not; that when he died she took his papers and put them in a desk, where they remained until 1910, when she found the

policy among these papers. She not only had in her possession the policy sued on, but she also had the reinsurance policy for $5,000 issued by the appellant, and the three letters to the insured, which on their face gave sufficient information to enable her to have furnished the proof of death as required by the policy. No legal excuse for failing to furnish this proof is alleged or proved.

We do.not deem it necessary to set out or to discuss the conclusions of law. In view of the condition of the pleadings and evidence, we are of the opinion that justice will be best subserved by reversing the judgment and ordering a new trial, instead of directing the court to restate its conclusions of law. Judgment is therefore reversed, with directions to sustain the appellant's motion for a new trial, to sustain the demurrer to the amended complaint, and for further proceedings not inconsistent with this opinion.