# Nichols & Shepard Company v. Wheeler.

(Decided October. 24, 1912.)

## Appeal from Simpson Circuit Court.

1. Contracts—When Purchaser Not Entitled to Rescission.—The purchaser of a second hand sixteen horse power engine, on discovering that it was a twelve horse power failed to return it or offer to return it in a reasonable time. Held, that he was not entitled to a rescission of the contract on the ground of fraud.

2. Same—Abatement of Price.—In such a case, however, he is entitled to an abatement of the price to the extent of the failure of the consideration and should only be required to pay the price of a twelve horse power engine.

3. Same—Warranty—Notice.—A clause in a contract requiring five days notice under a warranty of machinery made by the seller does not apply to machinery sold without warranty and made by another.

C. C. BAGBY, ROARK & FINN for appellant.

GEORGE C. HARRIS and McQUOWN & BECKHAM for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON—Reversing.

Nichols & Shepard Company brought this suit against J. P. Wheeler to recover upon two notes each, for three hundred and twenty-five ($325) dollars, dated Dec. 8, 1909, payable Sept. 1, 1910, and Sept. 1, 1911, respectively. The notes were signed by O. P. Wheeler and J. P. Wheeler. O. P. Wheeler was a non-resident of the State and not served with process. J. P. Wheeler filed an answer in two paragraphs. In the first paragraph he alleged that O. P. Wheeler was the principal in the note and he only a surety; that O. P. Wheeler had instituted a suit in Davidson County, Tennessee, for the purpose of having the notes canceled on the ground that they were procured by fraud and had in that suit procured an injunction restraining the plaintiffs from proceeding to collect the notes. The court properly sustained the plaintiff's demurrer to this paragraph, the pendency of a suit in Tennessee being no bar to a suit in Kentucky, on the notes. It is not shown that suit was instituted before this suit. The interlocutory orders entered in that case could not be pleaded in bar of the proceedings in Kentucky.

In the second paragraph of his answer he pleaded that the notes were given for the price of "one traction engine, 16 horse power, compound," which O. P. Wheeler bought to operate a saw mill and rock crusher, as plaintiffs knew at the time, and the engine was, in fact, a twelve horse power engine wholly incapable of furnishing the power to operate either a saw mill or rock crusher; that O. P. Wheeler received the engine believing it was a sixteen horse power engine and that J. P. Wheeler signed the notes assured by plaintiffs that O. P. Wheeler would get a sixteen horse power engine; that the engine was worthless to run a saw mill or rock crusher; that O. P. Wheeler tried, faithfully, to operate it, but it was a complete failure and he offered to return it to plaintiffs when he found out that it was only a twelve horse power engine and they refused to take it back.

The plaintiffs filed a reply controverting the allegations of the answer and pleading specially the written contract under which the engine was sold, the writing being the usual form of contract used by the plaintiffs for the sale of their machinery and providing that if the machinery failed to fill the warranty, written notice must be given within five days from its first use, to the plaintiffs at their home office, by registered letter. It also provided that second hand machinery and machinery not built by plaintiffs was not warranted. Plaintiffs alleged that no notice was given of any defect in the engine as provided by the written contract. Proof was taken and on final hearing the circuit court entered a judgment canceling the notes and the contract for the sale of the engine on the ground that the plaintiff sold O. P. Wheeler a sixteen horse power engine and that the engine delivered to him was not a sixteen horse power engine. The sheriff was directed to deliver the engine to the plaintiffs, upon their request. The plaintiffs appeal.

The facts of the case, briefly stated, are these:

O. P. Wheeler went to Nashville to buy an engine and after visiting some other places went to the agent of the plaintiffs. He had there a second hand J. I. Case engine which he had bought some months before. After seeing it operated Wheeler agreed to buy it and signed the contract dated November 16, 1909, which was sent on to the company for approval. In this contract the en-

gine was thus described: "One traction engine, sixteen horse power, compound, second hand, No. ——, made by J. I. Case Company." The contract was approved by the company and Wheeler returned on December 8th, and executed the notes sued on and got the engine. Peyton, the agent of the plaintiffs, had bought the engine as a sixteen horse power and told Wheeler it was a sixteen horse power engine, but he was not a machinist and went only by the statement of the man he bought it from, the engine being so described in the contract between them. The fact was that up to 1903 the J. I. Case Company rated an engine of this kind a fifteen horse power; after 1903 they had rated it as a twelve horse power engine. Whether this engine was made before or after 1903 does not definitely appear in the proof. O. P. Wheeler left Nashville with the engine on December 8. On December 20, he wrote to Mr. Peyton, as follows:

"My engine seems to be a twelve h. p. instead of a sixteen h. p. as you thought. However, if it proves to do the work I have for it to do it will be satisfactory to me, whatever rated h. p. it may be."

In that letter he complained of certain defects in the engine and proposed an adjustment which seems to have been accepted. The company heard no further from him until June 6, 1910, when he wrote them this letter:

"I have now used the engine I bought from you as a sixteen h. p. in sawing out two sets of lumber. The first set being of sycamore entirely gave me little idea of its capacity on account of having to use green sycamore slabs as fuel. Since then I have cut ten thousand feet of oak, the slabs of which furnished ample steam to supply the engine to make it develop its full power. I have compared it by measurements of all its parts to the specifications set down in the Case catalogue and find it is rated by the Case people as twelve h. p. and my experience thus far proves to me that it will not develop more than its rated h. p. As a twelve horse power I do not think it has a superior for doing good work in my section and it is perfectly satisfactory that far. But my work requires more power than that as I stated to you when I bought the engine. On account of this engine being a twelve instead of a sixteen h. p. I failed to get the job of pulling the Simpson County rock crusher and I have been otherwise handicapped. I have all the sawing I can do from now until Xmas right ahead of me and

would like to get this exchanged for a sixteen h. p. as soon as possible. Please look through your stock and let me know what you have at the earliest date possible. If you would like to see this engine at work and go over it again for your own satisfaction get off the train at either Mitchellville or at Portland and drive out about five miles to Jim Webb's, where it will be in operation for the next two or three weeks.

"Very sincerely,

"O. P. WHEELER."

After this letter was written he continued to use the engine until the next fall when he met Peyton in Nashville and proposed to rescind the trade, which Peyton declined to do.

The proof clearly shows that the engine was not a sixteen horse power and that Wheeler had considerable trouble with it, but some of these troubles might have been due to the way it was handled or managed. There is no evidence that Peyton practiced a fraud upon him and if a fraud had been practiced upon him it was incumbent upon him when he discovered the fraud to offer to return the engine. He could not keep the engine and continue to use it and after using it as long as he did, compel the company to take it back. His continued use of the engine was a waiver of his right to rescind the contract. But, while this is true, he, in fact, got only a twelve horse power engine when a sixteen horse power engine was sold to him. The proof shows that a twelve horse power engine like this is worth one hundred and fifty ($150) dollars less than a sixteen horse power. We have examined the written contract relied upon by the plaintiffs, carefully, and conclude that taken as a whole the warranty contained therein is of the machinery made by the plaintiffs and that the requirement about giving notice applies only to this warranty. The engine in question being a second hand engine was sold without warranty but it was sold as a sixteen horse power engine and there was an implied warranty that it was a sixteen horse power engine. As it was not a sixteen horse power engine Wheeler should not be required to pay the full price, but only the price of a twelve horse power engine. We, therefore, conclude that the notes should be credited by one hundred and fifty ($150) dollars as of date December 8, 1909, and that subject to this

credit plaintiffs are entitled to a judgment on the notes and the foreclosure of their lien on the engine.

Judgment reversed and cause remanded for a judgment as above indicated.