## BETHEL S. ROGGENKAMP *v.* MATTHIAS A. ROGGENKAMP

[No. 600, September Term, 1974.]

*Decided March 14, 1975.*

The cause was argued before MORTON, POWERS and MASON, JJ.

*Arnold M. Weiner,* with whom was *Steven P. Resnick* on the brief, for appellant.

*Benjamin L. Cardin* for appellee.

MORTON, J., delivered the opinion of the Court.

This is an appeal by the appellant/wife, Bethel S. Roggenkamp, from a decree of the Circuit Court of Baltimore City (Grady, J., presiding) granting the appellee/husband, Matthias A. Roggenkamp, a divorce a vinculo matrimonii.

The parties were married in 1946 at a time when both were officers in the United States Navy. The wife resigned her commission in the Navy and they ultimately took up residence in California. In July 1964 the husband filed suit in California for separate maintenance and the wife filed a cross suit seeking the same relief.

On March 15, 1965, the California court entered an order, *pendente lite,* directing the husband to make monthly support payments to the wife and enjoined him from encumbering or transferring certain property, including life insurance policies in his name. During the pendency of this litigation, the husband left California and went to Reno, Nevada, where he filed suit for divorce in June 1965.

The California court entered a final decree in July 1965 awarding separate maintenance to the wife; dismissed the husband's suit; decreed permanent alimony to the wife; and imposed a number of affirmative obligations upon the husband. In addition, the husband was enjoined from filing any domestic relations action against the wife in any other jurisdiction or court and he was specifically directed to dismiss the Nevada divorce action.

In August 1965 the husband moved from Nevada to Maryland and has made his home in this State ever since. He did not comply with any of the provisions of the California decree, asserting that he was unaware of the decree until sometime in 1966.

According to the wife, she learned from the Navy Department that her husband was residing in Maryland and in June 1967 she came to Maryland and instituted proceedings to enforce the California decree.

After a hearing in Circuit Court No. 2 of Baltimore City, an order was entered on July 3, 1967, directing the husband to make a lump sum payment of $1,000 to the wife. In addition, he was directed to pay $50 per month toward the alimony arrearages and to make regular alimony payments of $350 per month as provided in the California decree. It was further decreed that the time for filing a responsive pleading to the wife's suit would be postponed indefinitely so long as the husband complied with the order regarding alimony payments to the wife. The record indicates that the husband continued to comply with the order and the wife sought no further relief either in Maryland or California.

On January 10, 1973, the husband filed a bill of complaint in the Circuit Court of Baltimore City seeking an absolute divorce from the wife who remained a resident of California. The wife filed a motion raising preliminary objections, asserting that the Maryland court should not entertain jurisdiction of the husband's suit for divorce since he had not complied with the decree of the California court; he had not sought relief from the commands of the California decree; and the Nevada divorce proceedings brought by him in 1965 were still pending. After a hearing (Liss, J., presiding), the motion raising preliminary objections was denied, conditioned upon the husband's dismissal of the Nevada proceedings, which he promptly had dismissed. In denying the motion raising preliminary objections, the court found from the evidence adduced at the hearing thereon that the husband was a bona fide resident of this State and concluded that the California decree of 1965 should not be a bar to the husband's maintenance of a divorce action in this State.

The wife then filed an answer to the bill of complaint and again set out as a defense the failure of the husband to comply with the terms of the California decree, including the provision that the husband be prohibited from bringing a domestic relations suit against the wife in another jurisdiction. The chancellor below, after a full hearing, found that the parties had been voluntarily separated for a period of time sufficient to satisfy the statute and entered a decree granting the husband an absolute divorce. The decree

was entered on May 20, 1974, and incorporated the provisions of the 1965 California decree in favor of the wife, but made no provisions for the payment of alimony arrearages. It did increase the regular alimony payments from $350 per month to $400 per month.

This appeal followed. At the time of argument, counsel advised us that the husband was 78 years old and the wife ten years younger. The husband apparently desires to remarry.

It is first contended that the husband, "having engaged in a course of conduct involving serious and continued contempts of the California court, should not be afforded further affirmative relief with respect to his marital relationship until he has purged himself of contempt."

Reliance is placed upon the Court of Appeals decision in *Skirven v. Skirven*, 154 Md. 267, 271, where it was stated: "* * * here the rule is that, while one adjudged guilty of contempt may attack the finding directly, he cannot, so long as it stands unimpeached, be permitted as a matter of right to make any motion, file any petition, or assert any claim for relief, in the particular suit in which the contempt has been adjudicated." There, a husband had been adjudged in contempt for failure to comply with an order to pay alimony and counsel fees, *pendente lite*, and the chancellor denied his petition to compel the plaintiff/wife to go forward with the proceeding so long as his contempt remained unpurged.

Reference is also made by appellant to the holding in *Gunter v. Gunter*, 187 Md. 228, where the chancellor had dismissed the husband's bill to partition property formerly owned by him and his wife as tenants by the entireties because the husband was in default on alimony payments. The Court of Appeals, while quoting with approval the above language in *Skirven*, reversed the action of the chancellor in dismissing the bill for partition because "the decree dismissing the bill was not conditioned upon compliance with the divorce decree, but undertook to deal finally with his right to partition." *Gunter, supra*, at 233.

Appellant also calls attention to *Brewster v. Brewster*, 207

Md. 193, 202, where the Court stated: "Finally, the contention that the Chancellor erred, in dismissing his [the husband's] petition for reduction in the amount of alimony, is without merit for the reason that the appellant [husband] was in default and in contempt. *Gunter v. Gunter,* 187 Md. 228, 233; *Skirven v. Skirven,* 154 Md. 267, 271."

It is at once apparent that the rule enunciated in *Skirven,* which apparently has been adhered to since, addresses the issue in terms of "as a matter of right": one who has been adjudged a contemner may not, *as a matter of right,* claim relief "in the particular suit *in which the contempt has been adjudicated."* (Emphasis supplied.) The Court, in *Skirven,* went on to say, at 271: "The defendant, therefore, if he was in contempt, *had no right to insist* that the plaintiff proceed with the case until he purged himself of it * * *." (Emphasis supplied.)

From our analysis of the enunciated rule, we are of the opinion that the Court in *Skirven* chose its words carefully and, in doing so, intended only to announce that any right that a contemner might have in a legal proceeding could be foreclosed to him, in the discretion of the chancellor, at least until his contempt has been purged. Otherwise stated, an opposing party to the litigation is not entitled, as a matter of right, to bar the contemner from pursuing further action in the proceeding, this being a matter within the sound discretion of the chancellor.

It is to be noted that the *Skirven* rule speaks in terms of a contemner's right to proceed "in the particular suit in which the contempt has been adjudicated." In the case before us, the appellee has not been adjudged in contempt in any legal proceeding in this State. Thus, whether the failure of the appellee here to comply with the California decree could have served as a basis for the chancellor below denying him the right to proceed with the divorce action is not before us since the chancellor in his discretion, which we think he exercised soundly, did not permit the failure to comply with the California decree to serve as a bar to the divorce proceeding here.

We concur in the finding of the chancellor that no useful purpose would be served in compelling the appellee, 78 year old bona fide resident of Maryland, to return to California and purge himself of any contempt of a court of that State. The appellee has continued to comply with the decree entered in Circuit Court No. 2 of Baltimore City on July 3, 1967, and the decree of divorce, which is the subject of this appeal, incorporated substantially all the provisions of the 1965 California decree and, in fact, increased the payments of alimony to the wife from $350 per month to $400 per month. Under the circumstances, we cannot find that the chancellor erred in granting the appellee a divorce, notwithstanding his failure to comply with the California decree.

We are unpersuaded by the appellant's final argument that since the appellee "first invoked the jurisdiction of the California court over his marital relationship, and since that court, in the exercise of its jurisdiction, issued a valid anti-suit injunction, Mr. Roggenkamp [appellee] should be required to seek dissolution of that injunction before being permitted to secure court action in another forum in derogation of its provisions."

We agree, as appellant argues, that the California court had the power to enjoin her husband from filing any domestic relations action against her in any other jurisdiction and that the California court had the authority to direct him to dismiss the Nevada divorce proceeding filed by him. At the time the injunctive decree was entered in 1965, it was apparent that both parties were residents of California and had submitted themselves to the jurisdiction of the court by their respective bill and cross bill for separate maintenance. As pointed out in *Annot.* 54 A.L.R.2d, 1240, 1242:

"It is undisputed that a court of equity has the power to issue an injunction, in an appropriate case, restraining one spouse from commencing or prosecuting an action for divorce or separation in a sister state or foreign country."

See also *Donigan v. Donigan,* 208 Md. 511; *Miller v. Gittings,* 85 Md. 601.

The power of the California court to issue such a decree does not, however, necessarily preclude the courts of this State, under appropriate circumstances, from entertaining the enjoined action. As stated in 42 Am.Jur.2d *Injunctions* § 227:

> "Neither the full faith and credit clause nor rules of comity require compulsory recognition of an injunction issued in another jurisdiction against the prosecution of a local action at law. An injunction against the prosecution of an action in another state acts upon the parties rather than the court, and so the court in which the enjoined action is pending has the power to proceed with the litigation despite the injunction. The fact that the plaintiff might be in contempt of the enjoining court is not a matter the foreign court would be compelled to recognize, and the failure of a party to obey the injunction, or of the court to take cognizance of the order, will not affect the validity of the decree issued in the action. Nevertheless, subject to some dissent, it has been held that the court may take cognizance of the judicial processes of another state and, as a matter of comity, recognize an injunction issued by the courts of another state, so long, at least, as the recognition of the foreign injunction does not conflict with the rights of citizens of the state in which the action is sought to be maintained." [Footnotes omitted.]

The power, then, of the court below to entertain this action is beyond question. The appellee, of course, in prosecuting this divorce action may well be in violation of the California injunction and subject to contempt penalties there. But the jurisdiction of our courts to accommodate his divorce action is unhampered by the outstanding injunction. *See Stambaugh v. Stambaugh,* 294 A. 2d 817 (Pa. Super.

1972); *Commonwealth v. Messing,* 171 A. 2d 893 (Pa. Super. 1961).

Appellant has referred us to a practice or policy in a number of States where recognition of a foreign anti-suit injunction depends on priority of jurisdiction. Adoption and adherence to this policy would compel us to find that the California anti-suit injunction served as a bar to the appellee's divorce action in this State since the parties first litigated their marital differences in California. *See, e.g., James v. Grand Trunk Western Railroad Co.,* 152 N.E.2d 858 (Ill. 1958); *Alford v. Wabash Ry. Co.,* 73 S.W.2d 277 (Mo. App. 1934).

We are unpersuaded, however, that priority of jurisdiction is determinative, without more, on the question of recognition of a sister State's injunction. Indeed, in *Peterson v. Chicago, B. & O. Ry. Co.,* 244 N. W. 823 (Minn. 1932), priority was said to be "immaterial" as to the recognition issue. While we think that priority may well be a factor to be weighed, we do not think that blind adherence to such a rule would serve the ends of equity between the parties. We are of the opinion that "wise judicial discretion is today the only practical answer to the problem" [1] and that the question of comity should be treated on a case to case basis with the end in view of ascertaining what is just and equitable between the parties under all the particular circumstances. *Cunningham v. Cunningham,* 200 A. 2d 734 (Conn. Super. 1964), at 736.

The chancellor below correctly expressed the problem of this case:

> "* * * but what I am really faced with is should Maryland in effect say, Mr. Roggenkamp, if you want a divorce from your wife you would first have to go back to California and let the California Court punish you for contempt. I don't think [this] is required, assuming that the facts are as they appear on this record. Mr. Roggenkamp, whatever

---

1. Leflar, *American Conflicts Law,* § 55, p. 119.

his original intentions were for moving to Nevada in 1965, he has been in good faith a resident of the State of Maryland since 1965, for a period of eight years. He has established a bona fide residence in Maryland and he is engaged in an occupation here in Maryland that is earning him a livelihood and he pays taxes in Maryland, and that he is a voter in Maryland. It seems to me Mr. Roggenkamp is a resident * * * in the State of Maryland, [and] to deny him the benefit of whatever the laws are in the State of Maryland * * * because his wife prefers that he fight the matters out in California, it seems to me it would be more than [is] required under the decisions * * *. Justice does not require if you want a divorce from your wife you have to go three thousand miles across the country and fight it out in California."

We think the chancellor fairly assessed the equities of the case; and by incorporating substantially all of the obligations imposed upon the appellee by the California court, he did, in effect, give substantial credence to that decree. We shall not disturb his findings and decree.

*Decree affirmed; costs to be paid by appellant.*