DOROTHY ANNETTE ABNEY *v.* JAMES HAROLD ABNEY

[No. 2-1275A382. Filed March 27, 1978. Rehearing denied April 20, 1978.]

*John T. Neighbours, Cadick, Burns, Duck & Neighbours*, of Indianapolis, *William P. Ortale, Ortale, Kelley, Herbert & Crawford*, of Nashville, Tennessee, for appellant.

*Richard A. Rogers, Morton Tumbove, Rogers & Ruble*, of Indianapolis, for appellee.

SULLIVAN, J. — The marriage of James Abney and Dorothy Abney was dissolved on July 29, 1975. In our initial response to the wife's appeal, we felt compelled to affirm the judgment because her brief did not contain a verbatim statement of the dissolution decree which we deemed crucial to a resolution of the issues she raised. Our opinion is reported at 360 N.E.2d 1044.

Thereafter the Supreme Court, on the wife's petition to transfer, concluded that her error of omission was adequately cured by the presence of the verbatim judgment in appellee's brief. The Supreme

Court's Order of July 29, 1977 remanded the case to this Court for review on the merits.[1] We now proceed pursuant to that Order.

Dorothy Abney's appeal presents the following issues for review:

(1) whether two prior Tennessee decrees precluded the Indiana trial court from entertaining the husband's petition for dissolution;

(2) whether the trial court erred in not exercising its equitable discretion to deny dissolution, even though the marriage was irretrievably broken; and

(3) whether appellant was denied procedural due process.

We affirm.

I.

## INDIANA TRIAL COURT DID NOT VIOLATE FULL FAITH AND CREDIT OR COMITY PRINCIPLES IN ENTERTAINING HUSBAND'S PETITION FOR DISSOLUTION

The Indiana decree dissolving this marriage represents the culmination of a rather protracted history of litigation between these parties.

James and Dorothy Abney were married on November 27, 1958. After a little more than five years, Dorothy Abney vacated the marital home in Florida and moved to Tennessee with their two children. The parties have lived apart ever since.

Dorothy Abney obtained a separate maintenance decree from the Probate Court of Davidson County, Tennessee (hereinafter referred

---

1. The Order of Remand reads as follows:

"It is the opinion of this Court that *appellant's* error of omitting the verbatim statement of the judgment (decree) from his brief was adequately cured by the presence of the verbatim judgment in *appellee's* brief. *See Teeple v. State ex rel., Bower* (1908), 171 Ind. 268, 86 N.E. 49. Moreover, our opinion is bolstered by the rule of law that appeals should be decided on the merits wherever possible. *See State v. Heslar* (1972), 257 Ind. 625, 277 N.E.2d 796. This Court believes the Court of Appeals will not be inconvenienced in this case if it has to find the verbatim judgment in the appellee's rather than the appellant's brief.

"Therefore, pursuant to this opinion it is ordered that this case be and the same is remanded to the Court of Appeals, for review on the merits." (Original emphasis) This Order would appear to reject the rationale in *Suess v. Vogelgesang* (1972), 151 Ind. App. 631, 281 N.E.2d 536, insofar as Ind. Rules of Procedure, Appellate Rule 8.3(A)(4) is concerned.

to as the Tennessee court). The decree, dated May 25, 1964, ordered James Abney to pay support to his wife and two minor children.[2]

In the period that followed, the Tennessee court entertained successive petitions from James Abney for divorce. His first petition was dismissed, a decision which on appeal was affirmed in part and reversed in part. *Abney v. Abney* (1968), 222 Tenn. 160, 433 S.W.2d 847.[3] On remand, his supplemental petition for divorce was also dismissed.[4] This Tennessee decree, dated July 21, 1969, incorporates by reference an earlier memorandum opinion which refers to a previous adjudication finding James Abney in contempt for his failure to pay $1,160 arrearage in support. The Tennessee court specifically dismissed the husband's divorce petition for the following reason, as stated in the decree:

"[James Abney's] contempt of Court bars him from asking this Court to grant an absolute divorce to his wife."

The case on appeal, affirming the dismissal, is reported at (1970), 61 Tenn. App. 531, 456 S.W.2d 364.

The record next discloses that James Abney filed the present dissolution of marriage petition in the Circuit Court of Marion County, Indiana, on October 8, 1974. Dorothy Abney responded with a Motion to Dismiss and an Answer, in essence requesting the Indiana trial court to defer to the Tennessee court because of the previous litigation in that state.

After the Indiana court refused to defer, Dorothy Abney obtained

2. The decree ordering payment of $300 per month was modified on appeal to $260 per month. For the past history of this litigation, see generally, *Abney v. Abney* (1970), 61 Tenn. App. 531, 456 S.W.2d 364.

3. James Abney's original petition requested that either he or his wife be granted an absolute divorce under a statutory proviso empowering the court to grant an absolute divorce where a separate maintenance decree or a decree of divorce from bed and board had been in existence more than two years without reconciliation. Tenn. Code Annot., § 36-802 (1976 Supp.). The Tennessee Supreme Court held that an absolute divorce under this section must be awarded to the same party who previously had obtained the limited divorce, although either party could petition for the absolute divorce on such ground. The dismissal of that part of the petition requesting that James Abney be granted an absolute divorce was affirmed. The other part of the petition requesting that the wife's separate maintenance decree be changed to a decree for absolute divorce was remanded to the trial court for further consideration.

4. The decree also increased the amount of the support payments to $375 per month.

another order from the Tennessee court finding James Abney in further contempt and this time restraining him from pursuing a dissolution of marriage in any other jurisdiction, particularly Indiana. The Tennessee decree, dated April 16, 1975, issued a restraining order for the reason that,

> "this court [has] continuing jurisdiction over this Defendant through a separate maintenance decree . . . [and] refused this Defendant such relief previously requested under T.C.A. 36-802 because of his being in contempt, and this contempt having never been purged."

Dorothy Abney argues that under the Full Faith and Credit Clause of the United States Constitution or, alternatively, as a matter of comity, the Tennessee decrees of July 21, 1969 and April 16, 1975 precluded the Indiana trial court from entertaining James Abney's petition for dissolution.

With regard to the decree of July 21, 1969, we find nothing in the Tennessee court's order which, standing alone, could be given Full Faith and Credit or be recognized as a matter of comity by the Indiana trial court. The Tennessee court made no pronouncement relating to Indiana. It did not decree that the contempt was a bar to a foreign dissolution or divorce, but merely that it chose not to grant the husband's petition because of his unpurged contempt.

The other Tennessee decree, dated April 16, 1975, presents a more difficult problem because this time the court went further and not only issued an additional contempt citation but specifically enjoined James Abney from obtaining dissolution of the marriage in Indiana. Having found no Indiana authority on the operative effect of such a foreign anti-suit injunction, we turn to case precedent from other jurisdictions for guidance.

The reported cases unanimously agree that in the absence of a controlling United States Supreme Court decision to the contrary, there is no constitutional compulsion to recognize anti-suit injunctions.

Various reasons have been advanced for denying Full Faith and Credit. It has been suggested that such injunctions do not adjudicate the merits of the ultimate controversy; they merely enjoin prosecu-

tion of the action in another state.[5] *Union Pacific R. Co. v. Rule* (1923), 155 Minn. 302, 193 N.W. 161. Other cases have reasoned that since an anti-suit injunction acts upon the parties rather than court, the forum has the power to proceed notwithstanding the sister-state injunction. *Dominick v. Dominick* (1960), 26 Misc.2d 344, 205 N.Y.S.2d 503, citing *Kleinschmidt v. Kleinschmidt* (1951), 343 Ill.App. 539, 99 N.E.2d 623. The underlying rationale appears to be that each state has a legitimate interest in determining for itself the fairness or unfairness of any resort to its courts. See generally, Ehrenzweig, *Treatise on the Conflict of Laws* (1962), p. 183; Reese, "Full Faith and Credit to Foreign Equity Decrees," 42 Iowa L. Rev. 183 (1957). In the present context, moreover, the suggestion that a court *must* decline to hear a divorce action when confronted with a sister-state injunction is contrary to the United States Supreme Court's approval of migratory divorces and the requirement that Full Faith and Credit be given to such decrees. If a state has the power, i.e. the jurisdiction, to grant a divorce as against a non-resident party, certainly that power is not destroyed because an anti-suit injunction has been issued by a sister-state. *See, e.g., Keck v. Keck* (1972), 8 Ill.App.3d 277, 290 N.E.2d 385, rev'd on another ground (1974), 56 Ill.2d 508, 309 N.E.2d 217.

Thus in those instances where deference has been extended it has been based on comity rather than on the constitutional command of Full Faith and Credit. *E.g., Strubinger v. Mid-Union Indemnity Co.* (1961), Mo.App., 352 S.W.2d 397; *Allen v. Chicago, Great Western R. Co.* (1925), 239 Ill.App. 38; *Fisher v. Pacific Mut. Life Ins. Co.* (1916), 112 Miss. 30, 72 So. 846; *Gilman v. Ketcham* (1893), 84 Wis. 60, 54 N.W. 395. *Contra, Frye v. Chicago, R. I. & P. Ry. Co.* (1923), 157 Minn. 52, 195 N.W. 629, cert. denied 263 U.S. 723; *State ex rel. Bossung v. District Court* (1918), 140 Minn. 494, 168 N.W. 589. See generally, Annot., 74 A.L.R.2d 828.

However, the rules of comity do not require compulsory recognition

---

5. *But see,* Laflar, *American Conflicts Law* (1968), pp. 118-19:

"As an original question it would be arguable that the full faith and credit clause should compel the other state to accept the injunction as an adjudication of the impropriety of the forum for suit, but the authorities are all the other way."

of foreign anti-suit injunctions. *See, e.g., Cunningham v. Cunningham* (1964), 25 Conn. Sup. 221, 200 A.2d 734; *James v. Grand Trunk W. R. Co.* (1958), 14 Ill.2d 356, 152 N.E.2d 858, cert. denied 358 U.S. 915; *Alford v. Wabash Ry. Co.* (1934), 229 Mo.App. 102, 73 S.W.2d 277; *Nichols & Shepard Co. v. Wheeler* (1912), 150 Ky. 169, 150 S.W. 33. See generally, Annot., 74 A.L.R.2d 828.

The cases surveyed which have faced the issue, albeit not necessarily in connection with a pending dissolution of marriage action, are generally in agreeement. Where a sister-state enjoins a litigant from proceeding with a *previously instituted* action, the court in the forum state will usually refuse to recognize the injunction as a bar to disposition of the pending action. Recognition is thus made to depend on priority of jurisdiction, the controlling factor being not the issuance of the anti-suit injunction but whether the state issuing the injunction was the first to obtain jurisdiction of the cause. *See,* 42 Am.Jur.2d, Injunctions, § 227, p. 1009. This approach is based on the policy that after suits are commenced in one state, it is inconsistent with inter-state harmony to let the courts of another state control their prosecution. The court which first obtains jurisdiction of the case should ordinarily be permitted to retain it until the cause is finally adjudicated, without interference from the courts of other states. *See, James v. Grand Trunk W.R. Co., supra,* and the cases cited therein.

This is not to say that priority of jurisdiction will be the dispositive factor in every case. The equities involved and the other competing interests of the two jurisdictions should also be considered. *See, e.g., Roggenkamp v. Roggenkamp* (1975), 25 Md.App. 243, 333 A.2d 374.

We find that our own cases which have had occasion to consider comity principles in related situations are in accord with this approach. Indiana recognizes comity not as a matter of right, but, out of deference and goodwill, as a rule of practice which promotes uniformity of decision and inter-state harmony. *State of Florida ex rel. O'Malley v. Dept. of Insurance of the State of Indiana* (1973), 155 Ind.App. 168, 176, 291 N.E.2d 907, 912. The courts of this State are bound to help enforce the laws of sister-states unless enforcement would result in a violation of

Indiana law or injury to local citizens.[6] *Sweigart v. State* (1938), 213 Ind. 157, 168, 12 N.E.2d 134.

In this case, Dorothy Abney argues that the Tennessee court retained "continuing jurisdiction over the marital relationship", thereby implying that suit was already pending in Tennessee. We conclude, to the contrary, that no action was pending in Tennessee which barred suit in Indiana *for dissolution of the marriage.* Indiana was the first to obtain jurisdiction of this matter.

The Tennessee court did not indicate that it retained jurisdiction with respect to any divorce or dissolution action between these parties. The husband's petition for divorce was not held in abeyance but was specifically dismissed because of his unpurged contempt.

Even if the Tennessee court had continuing jurisdiction with respect to the separate maintenance decree for purposes of modification, separate maintenance and divorce are generally considered separate causes of action. A suit for separate maintenance is for the purpose of enforcing the obligations of the marriage, whereas a suit for divorce is an action for dissolution of the marriage.[7] *See, Estin v. Estin* (1948), 334 U.S. 541, 68 S.Ct. 1213 (incidents of the marital status are separable from the marital status itself). See generally, 24 Am.Jur.2d, Divorce & Separation, § 3, p. 178. Hence a separate maintenance decree is ordinarily no bar to a later action for divorce.[8] *Owen v. Owen* (1973), 389 Mich. 117, 205 N.W.2d 181, cert. denied 414 U.S. 830; *Fullwood v. Fullwood* (1967), 270 N.C. 421, 154 S.E.2d 473; *Allums v. Allums* (1971), Tex.Civ.App., 465 S.W.2d 461.

Regarding the other state interests involved in this litigation, we note that there is no indication of record that James Abney's residence

---

6.   The same principle applies whenever the propriety of issuing an injunction against foreign suit is considered. The power to interfere with a litigant duly pursuing legal rights and remedies in another state should be exercised sparingly. *See, New York, Chicago & St. Louis R. Co. v. Perdiue* (1933), 97 Ind. App. 517, 187 N.E. 349.

7.   Compare Tenn. Code Annot. § 36-820 (separate maintenance) with §§ 36-801 & 802 (divorce) (1977 Replacement).

8.   The res judicata effect of the decree, as to particular fact issues, is quite a different matter. *See* Annot., 90 A.L.R.2d 745, supplementing 38 A.L.R. 346.

in Indiana was a pretense for the purpose of procuring a dissolution. If this were the case, Indiana might have an interest in preventing resort to its courts for such a fraudulent purpose. But Indiana's interest in protecting the rights of its citizens runs counter to recognition of the Tennessee injunction. James Abney is a bona fide resident of the State, with the same right that each Indiana citizen has to adjudicate his marital status in our State courts.

On the otherhand, any legitimate interest which Tennessee had in the ongoing litigation between these parties was protected by the Indiana trial court's dissolution decree.

In the Tennessee decree of April 16, 1975, reference is made to James Abney's unpurged contempt as grounds for enjoining the dissolution of marriage proceeding in Indiana. We would agree that Tennessee's interest in preserving the integrity of its judicial system is of paramount importance. However, in our opinion the trial court did give effect to this contempt aspect of the Tennessee decree. The judgment herein incorporates the support arrearage which formed the basis of the contempt citation. The Indiana trial court specifically ordered James Abney to pay $10,390 in past due support and maintenance "as ordered by the Tennessee courts."

To the extent Dorothy Abney is arguing that the Indiana court should have refused to entertain the case altogether and deferred to the Tennessee court for resolution of this marital relationship, we decline to so hold. A contempt citation and the penalties therefor are directed against the person held in contempt. A party's unpurged contempt does not *ipso facto* divest a court of the authority to entertain a cause altogether.

This is not to say that an adjudication of contempt by a sister-state has no effect on similar litigation between the same parties in Indiana. A litigant who has been found in contempt by a court of this State is not permitted to flout the judicial process and may be barred from proceeding further with his cause until the contempt is purged. *See, Smith v. Smith* (1892), 2 Blackf. 232. *But cf., State ex rel. Gruenoch v. Miller* (1937), 212 Ind. 147, 8 N.E.2d 245. In such cases, the court's jurisdiction is not affected; it retains the power to entertain the cause. The plain-

tiff is merely barred on equitable grounds from proceeding further with his litigation.

In a proper case it may be appropriate to extend this equitable principle to a foreign contempt adjudication. However, this is not the question before us. We merely note that an important distinction exists between challenging the court's exercise of jurisdiction on grounds of comity and challenging the plaintiff's right to proceed on equitable grounds. Dorothy Abney's argument is confined to the former. We therefore hold, for the reasons discussed, that the exercise of jurisdiction by the Indiana trial court was not improper under the circumstances.

II.

### TRIAL COURT WAS CORRECT IN AUTOMATICALLY GRANTING DISSOLUTION UPON FINDING "IRRETRIEVABLE BREAKDOWN" OF THE MARRIAGE

Dorothy Abney argues that the trial court should have exercised equitable discretion to deny the dissolution, notwithstanding its finding that the marriage was irretrievably broken. She does not challenge the finding of irretrievable breakdown.

Our Dissolution of Marriage Act plainly does not lend itself to such an interpretation. IC 31-1-11.5-1 *et seq.* (Burns Code Ed., Supp. 1977).

When a petition for dissolution alleges "irretrievable breakdown", the key issue for the trial court's determination is whether there is a reasonable possibility of reconciliation. The relevant portion of IC 31-1-11.5-8(A) reads:

"Upon the final hearing: the court shall hear evidence and, if it finds that the material allegations of the petition are true, either a dissolution decree as provided in section 9(a) . . . or if the court finds that there is a reasonable possibility of reconciliation, the court may continue the matter and may order the parties to seek reconcilitation through any available counseling."

This provision, while perhaps inartfully drawn, has been interpreted in accordance with other sections of the Act. If a "reasonable possibility of reconciliation" exists, the court may continue the matter and order the parties to seek reconciliation through counseling. But if there is

no reasonable possibility of reconciliation, the marriage is necessarily irretrievably broken, in which case the Act directs the trial court to grant dissolution. *See Flora v. Flora* (1975), 166 Ind. App. 620, 337 N.E.2d 846, 849-850. IC 31-1-11.5-9(a) provides that "when the court has made the findings required by section 8(a) . . . , the court *shall* enter a dissolution decree [emphasis supplied]." Similar mandatory language[9] is found in IC 31-1-11.5-3(a):

"[a] dissolution of marriage . . . *shall* be decreed upon a finding by a court of one of the following grounds, and no other: (1) irretrievable breakdown of the marriage . . . [emphasis supplied]."

The Act thus gives the trial court no alternative but to grant a dissolution once it finds an irretrievable breakdown of the marriage.

We are not insensitive to Dorothy Abney's ultimate concern in this case. She suffers from severe rheumatoid arthritis which requires costly medical treatment. According to the parties' stipulations, the assistance she has been receiving through James Abney's military benefits terminates upon dissolution of the marriage. Dorothy Abney claims these benefits are her "life blood" and respectfully asserts that the equities compel us to reverse the dissolution decree.

The statute does not provide for the exercise of such discretion on the part of this Court any more than it permits such at the trial court level. We find that Dorothy Abney did pursue her proper recourse under the Act, and was awarded maintenance as an incapacitated spouse. Admittedly, the trial court found that James Abney at present is economically unable to provide her with sufficient maintenance to offset the loss of the medical benefits.[10] Yet we are without authority to reverse a dissolution decree correctly entered solely because the effect of the dissolution will be to terminate benefits which are advantageous to one of the parties.

---

9. The word "shall" in a statute is generally construed in an imperative and mandatory sense. *Sherrard v. Board of Com'rs of the County of Fulton* (1972), 151 Ind. App. 127, 278 N.E.2d 307.

10. Maintenance of an incapacitated spouse is subject to future modification. IC 31-1-11.5-9(c) (Burns Code Ed. 1977); *Newman v. Newman* (1976), 171 Ind. App. 202, 355 N.E.2d 867.

### III.

### *DUE PROCESS WAS NOT DENIED*

Dorothy Abney argues that if a finding of irretrievable breakdown results automatically in a dissolution decree, then in effect no consideration is given to the "incidents" of the marriage and the Act is an unconstitutional denial of procedural due process. She claims that the incidents of a marriage constitute property which cannot be taken without notice and an opportunity to be heard. Although her brief fails to point to any "incident" of this marriage that was not considered by the trial court, we presume she is referring to the medical assistance she received through James Abney's military benefits.

However, the trial court specifically found that "such insurance coverages which are presently in effect because of the marital relationship are not property rights." Appellant does not challenge this finding on appeal apart from her bald assertion that the "Act disturbs [her] property rights without requiring consideration of such rights."

We cannot find a denial of procedural due process, absent a showing a interference with a cognizable property right. No such showing was made here.

Accordingly, the dissolution decree and judgment are affirmed in all respects.

Lybrook, J., (participating by designation) and White, J. concur.

NOTE—Reported at 374 N.E.2d 264.