675 So.2d 356 (1996)
Ex parte NOBLE TRUCKING COMPANY, INC., and Robert Rayfield.
(Re STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Jane Nichols v. Robert C. RAYFIELD and Mike Fouts d/b/a Noble Trucking Company. Craig LUSK, By and Through his next friend and father, Paul LUSK, Sr. v. NOBLE TRUCKING COMPANY. Jeremy W. NICHOLS, a minor, By and Through his father and next friend Randy NICHOLS v. Robert C. RAYFIELD, an individual, and Noble Trucking Company, Inc., a domestic corporation).
1940759.
Supreme Court of Alabama.
January 12, 1996.
Richard E. Smith and Deborah Alley Smith of Rives & Peterson, Birmingham, and John K. Proter III of Livingston, Porter & Paulk, P.C., Scottsboro, for petitioners.
M. Clay Alspaugh and Pamela D. Beard of Hogan, Smith & Alspaugh, P.C., Birmingham, for Jeremy W. Nichols and Randy Nichols.
Gary W. Lackey, Scottsboro, for Craig Lusk.
Denise A. Ferguson and Tammy L. Frazier of Bell Richardson, P.A., Huntsville, for State Farm Mutual Automobile Insurance Company and Jane Nichols.
*357 COOK, Justice.
The petitioners, Robert C. Rayfield and Noble Trucking Company, Inc., defendants in three personal injury actions pending in the Jackson County Circuit Court, petition for a writ of mandamus directing the circuit court to stay proceedings pending the dissolution of an injunction entered by an Indiana court in "rehabilitation" proceedings against Noble's liability carrier, American Interfidelity Exchange ("American"). We deny the petition.
The evidence presented in the record before us suggests that in November 1991, an automobile belonging to Jane Nichols and being driven by Jeremy Nichols collided with a truck owned by Noble Trucking Company and being driven by Rayfield. Craig Lusk was a passenger in Nichols's vehicle. The Nicholses and Lusk commenced separate actions in 1992 against the truck's driver and its owners (hereafter identified collectively as "Noble").
In March 1994, American, as Noble's liability insurance carrier, was providing Noble's defense in the personal injury actions. However, "American was placed in rehabilitation by the Indiana Department of Insurance effective March 23, 1994." Petition for Writ of Mandamus, at 1. Two days later, and pursuant to Ind. Code Ann. § 27-9-1-4 (Burns 1994),[1] Indiana's version of the Uniform Insurers Liquidation Act, the Circuit Court of Marion County, Indiana, entered the following order:
"1. [American's] policyholders, insureds, creditors, shareholders, agents, brokers, and all other persons are enjoined from:
". . . .
"c. The commencement and prosecution of any suit, action, or other proceeding against or involving [American] or the Rehabilitator by way of original claim, third-party claim, joinder or otherwise (or by way of claim against an insured of [American] as to which [American] may be obligated to defend or pay a judgment), which seeks any one or more of the following types of relief against [American] or the Rehabilitator, whether solely, jointly, severally, or jointly and severally with respect to one or more other defendants:
"(1) money damages;
"(2) punitive damages;
". . . .
"d. The obtaining of any preference, judgment, attachment, garnishment, or lien against [American] or [its] property or assets, wherever located, or the levying of execution against [American] or [its] property or assets, wherever located, or the repossession of the property or assets of [American], wherever located, or the commencement and prosecution of any suit, action, or proceeding having any such purpose or effect;
". . . .
"g. Any other threatened or contemplated action that might lessen the value of [American's] assets or prejudice the rights of [its] policyholders, insureds, creditors, shareholders, agents, brokers, or the administration of this proceeding pursuant to Ind. Code 27-9."
On April 17, 1994, Noble filed a motion to stay the personal injury actions pending the resolution of American's rehabilitation proceeding in Indiana. On May 3, 1994, the circuit court stayed the personal injury actions *358 for 90 days. At the end of the 90 days, the trial court granted the plaintiffs' motion to reset the cases for trial. On January 12, 1995, however, Noble filed an "Objection To Trial Setting And Renewed Motion To Stay."[2]
On January 23, 1995, the trial court denied the defendants' motion, but removed the cases from the January 20, 1995, docket and reset the trial for March 13, 1995. Noble filed a motion for "reconsideration" of this order. On February 27, 1995, the trial court denied Noble's motion, but reset the trial for April 17, 1995, "to allow reasonable time for any clarification that either party may wish to make by mandamus [petition] to the Supreme Court of Alabama." On March 8, 1995, Noble petitioned this Court for a writ of mandamus directing the trial court to "stay the proceedings in this action until the... injunction entered in the Indiana rehabilitation proceedings against American has been lifted." Reply Brief of Petitioners, at 8.
Noble contends that this case is controlled by Ex parte United Equitable Life Ins. Co., 595 So.2d 1373 (Ala.1992), in which we discussed those provisions of Alabama's version of the Uniform Insurers Liquidation Act ("AUILA") appearing at Ala.Code 1975, §§ 27-32-1(2) to (13); 27-32-4; 27-32-5; and 27-32-15 through -22. In that case, Jerry and Marsha Bruce had purchased an accident and health insurance policy from United Equitable Life Insurance Company ("United"). They submitted a claim for medical expenses incurred; United refused to pay because an Illinois court had issued an order of rehabilitation freezing the properties and assets of United and preventing United from paying claims made against its insurance contract obligations.
The Bruces sued United in Marshall County, Alabama, to recover the benefits to which they were entitled. United moved to stay the Alabama action pending resolution of the Illinois rehabilitation proceedings; the trial court denied United's motion. United then sought a writ of mandamus from this Court directing the trial judge to vacate his order denying the motion to stay the litigation. In issuing the writ, we explained:
"[The Marshall County circuit court judge] stated in his ruling that, although actual collection of the money owed to the Bruces by United would violate the rehabilitation order, merely obtaining a judgment against United would not.... Provision 6 of the [Illinois] rehabilitation order restricts all officers and employees from paying any claims obligations to United's policyholders. Although this does not specifically prohibit the issuance of a judgment against United, the issuance of a judgment would undermine the very policy that the AUILA is based on. If this case were litigated and the Bruces obtained a judgment against United for the amount due under their policy, the judgment would give them priority for payment over others holding insurance contracts with United. The AUILA is meant to protect the interests of all policyholders until the company either becomes financially solvent again or some other form of action is taken. Therefore, until the Illinois court makes further determinations, the assets of United must remain neutral."
595 So.2d at 1374-75 (emphasis added).
The respondents in this case contend that United is distinguishable and, therefore, does not control the resolution of this dispute. This distinction, they argue, involves the fact that in United the insureds brought a direct action against their own insurer for its failure to pay, whereas this case involves personal injury actions by the respondents *359 against alleged tortfeasors insured under a liability policy issued by Americana nonparty as to the personal injury actions. We agree with the respondents that this distinction is significant enough to render United inapposite.
Moreover, Noble has failed to cite any provisions of Alabama's statutory scheme directly applicable to this dispute. Instead, it contends: "In order to effectuate the policy and purpose behind the UILA, this State must recognize the right of the Indiana domiciliary receiver to take possession of American's assets and to stay all pending actions in order to protect the policyholders." Petition for Writ of Mandamus, at 6 (emphasis added). This argument, as we understand it, essentially advances the view that the trial court should have stayed the action out of a sense of "comity."
It is well settled, however, that "the rule of comity is `a matter of courtesy, complaisance, [and] respect,'" State ex rel. Dykhouse v. Edwards, 908 S.W.2d 686, 689 (Mo. 1995) (emphasis added),[3] and that comity is extended not as a matter "`of right,'" but as a matter "`of deference and good will.'" Id. It involves "a voluntary decision of one state to defer to the policy of another in an effort to promote uniformity of laws, harmony in their application, and other related principles." Id. at 689-90. (emphasis added). See also Meenach v. General Motors Corp., 891 S.W.2d 398 (Ky.1995); James v. Grand Trunk Western R.R., 14 Ill.2d 356, 152 N.E.2d 858 (1958), cert. denied, 358 U.S. 915, 79 S.Ct. 288, 3 L.Ed.2d 239 (1958); 42 Am. Jur.2d Injunctions, § 227 (1969).
Moreover, "[w]here a sister-state enjoins a litigant from proceeding with a previously instituted action, the court in the forum state will usually refuse to recognize the injunction as a bar to disposition of the pending action." Abney v. Abney, 176 Ind.App. 22, 26-27, 374 N.E.2d 264, 267-68 (1978) (emphasis in original), cert. denied, 439 U.S. 1069, 99 S.Ct. 836, 59 L.Ed.2d 34 (1979). "The importance of priority of jurisdiction is based on the policy that after suits are commenced in one state, it is inconsistent with inter-state harmony if their prosecution be controlled by the courts of another state." Lowe v. Norfolk & Western Ry., 96 Ill.App.3d 637, 644, 52 Ill.Dec. 108, 114, 421 N.E.2d 971, 977 (1981). Indeed, "prosecution of a prior instituted action may be restrained only if it will result in `fraud, gross wrong or oppression.'" Id. (emphasis added) (quoting Illinois Life Ins. Co. v. Prentiss, 277 Ill. 383, 387, 115 N.E. 554, 556 (1917).[4] For these reasons, whether to stay an action in deference to the court of a foreign state is discretionary with the trial court of the forum state. Brown v. Brown, 493 So.2d 961 (Miss. 1986).
Additional considerations before the Jackson County Circuit Court included the fact that American is, in this action, only an indirect participant, the action itself being against American's insureds. The court could also consider the breadthunlimited chronologically or geographicallyof the Indiana injunction, and, consequently, the injunction's potential conflict with the plaintiffs' rights to remedies under Ala. Const.1901, § 13.[5] Indeed, an injunction as broad as this *360 one carries a clear potential for oppression, injustice, and prejudice to both parties in pending actions, resulting from the lapse of time and its consequent effect on the memories of witnesses and the availability of witnesses and evidence. This concern was specifically articulated by the trial court in its February 27, 1995, order: "It is the opinion of this court that, in drafting the Alabama Uniform Insurers Liquidation Act, it was not the intent of the legislature for a plaintiff under the facts in this case to be denied his day in court indefinitely." (Emphasis added.)
Moreover, in the February 27 order, the trial court postponed the scheduled trial datehaving previously granted a 90-day stay. We consider this action significant in light of Ind.Code Ann. § 27-9-3-4(a), argued by Noble in support of its stay motion; that statute expressly provides for a "stay [of] the action or proceeding for ninety (90) days." See note 2. The discretion exercised by the trial court in this case must be viewed in the context of this provision, considering the initial 90-day stay that was granted, as well as the subsequent postponement.
Also significant is the fact that the 90-day period set forth in § 27-9-3-(4) is expressly referable to actions pending in Indiana courts. Additionally, the statute expressly designates the "rehabilitator" as the party responsible for seeking stays in foreign courts. Of course, this mandamus petition does not relate to an Indiana action and it is not the rehabilitator seeking a writ ordering a stay.
It is well established that in cases requiring a trial court to exercise discretion, a writ of mandamus will issue only to correct an abuse of discretion. Ex parte Ben-Acadia, Ltd., 566 So.2d 486, 488 (Ala.1990). Our consideration of the factors discussed above compels us to conclude that the trial court did not abuse its discretion in denying a stay of proceedings until the Indiana injunction has been lifted. Consequently, the petition for a writ of mandamus is denied.
WRIT DENIED.
HOOPER, C.J., and MADDOX, ALMON, HOUSTON, KENNEDY, INGRAM, and BUTTS, JJ., concur.
NOTES
[1] Section 27-9-1-4 provides in pertinent part:

"A receiver appointed in a proceeding under IC 27-9 may at any time apply for, and any court with general jurisdiction may grant, restraining orders, preliminary and permanent injunctions, and other orders as considered necessary and proper to prevent any of the following:
"(1) The transaction of further business.
". . . .
"(3) Interference with the receiver or with a proceeding under IC 27-9.
". . . .
"(6) The institution or further prosecution of any actions or ... [proceedings].
"(7) The obtaining of preferences, judgments, attachments, garnishments, or liens against the insurer, its assets or its policyholders.
". . . .
"(11) Any other threatened or contemplated action that might lessen the value of the insurer's assets or prejudice the rights of policyholders, creditors, or shareholders, or the administration of any proceeding under IC 27-9."
[2] In support of this motion, Noble quoted Ind. Code Ann. § 27-9-3-4(a), which provides:

"Any court in Indiana before which any action or proceeding in which the insurer is a party or is obligated to defend a party is pending when a rehabilitation order against the insurer is entered shall stay the action or proceeding for ninety (90) days and for any additional time as is necessary for the rehabilitator to obtain proper representation and prepare for further proceedings. The rehabilitator shall take action respecting the pending litigation as he considers necessary in the interests of justice and for the protection of creditors, policyholders, and the public. The rehabilitator shall immediately consider all litigation pending outside Indiana and shall petition the courts having jurisdiction over that litigation for stays whenever necessary to protect the estate of the insurer."
[3] In Edwards, the Supreme Court of Missouri refused to enforce an order issued by a Michigan court enjoining indefinitely all "litigation involving Confederation [Life Insurance Company (`Confederation')]." 908 S.W.2d at 690. The injunction was issued upon the complaint of the Michigan commissioner of insurance, who was administering the assets of Confederation in rehabilitation proceedings. Id. at 686-87. The Missouri litigation to which the injunction was directed involved five pending actions against Confederation. Id. Addressing the Missouri Insurers Supervision, Rehabilitation and Liquidation Act ("MISRLA"), Mo.Ann.Stat. §§ 375.1150-.1246, 908 S.W.2d at 687, the Missouri Supreme Court concluded, among other things, that (1) the scope of the injunction was too broad and was unwarranted under MISRLA, 908 S.W.2d at 688, and that (2) neither the Full Faith and Credit Clause of the United States Constitution nor the doctrine of comity required enforcement of the injunction. 908 S.W.2d at 690.
[4] It has also been stated that "comity extends to substantive rights only and does not generally apply to remedies." State ex rel. Dykhouse v. Edwards, 908 S.W.2d 686, 690 (Mo.1995).
[5] Section 13, the "open courts provision" of the constitution, provides: "[A]ll courts shall be open; and ... every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay."