STATE OF FLORIDA, EX REL. THOMAS D. O'MALLEY, INSURANCE
COMMISSIONER AND TREASURER OF THE STATE OF FLORIDA, AS
HEAD OF DEPARTMENT OF INSURANCE, AS ANCILLARY RECEIVER
OF UNITED BONDING INSURANCE COMPANY *v.* DEPARTMENT OF
INSURANCE OF THE STATE OF INDIANA.

[No. 971A186.  Filed January 31, 1973.]

*Charles S. Gleason, Gleason, Woods & Johnson,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Don A. Tabbert, Wm. D. Lalley, and Robert B. Keene, Sparrenberger Duvall Tabbert & Lalley,* of Indianapolis, for appellee, *Donald A. Schabel, Buschmann, Carr & Schabel,* of counsel, of Indianapolis, for Emmco Insurance Company, amicus curiae.

## CASE SUMMARY

BUCHANAN, P.J.—This is an appeal by "Interested Party"-Appellant, the State of Florida ex rel. Thomas D. O'Malley, its Insurance Commissioner and Treasurer (hereinafter referred to interchangeably as Florida and the Florida Ancillary Receiver), from an Order denying Florida the right to distribute reinsurance proceeds to Florida claimants, in an Indiana statutory liquidation proceeding instituted by Petitioner-Appellee, the Department of Insurance of the State of Indiana (the Department) for the liquidation of United Bonding Insurance Company (United).

We affirm.

FACTS—The facts and evidence most favorable to the Department and the judgment below are:

On February 18, 1971, the Department filed an application with the Superior Court of Marion County, Room 7 (the Marion Superior Court), seeking a restraining order, injunctive relief and liquidation of United, an Indiana corporation. The next day the Department's application was granted and the Department was ordered, as domiciliary receiver, to take

possession of all the property and assets of United, none of which appear from the record to have been located in the State of Florida. Joseph D. Geeslin, Jr. (the Liquidator) was appointed special deputy to liquidate United's business.

Five years prior to the liquidation order, United had entered into a quota share reinsurance treaty (Reinsurance Treaty) with Emmco Insurance Company (Emmco), another Indiana corporation. The terms of the Reinsurance Treaty became effective on January 1, 1966. Under its terms Emmco agreed to accept 42½% of United's liability incurred on all fidelity and surety bonds written by United.

Article VIII of the Reinsurance Treaty pertaining to the insolvency of United provided in part:

> "In the event of the insolvency of the Company, any reinsurance that may be payable under this agreement to the Company by the Reinsurer shall be paid by the Reinsurer to the Company or its liquidator, receiver or statutory successor on the basis of the liability of the Company to the bonds reinsured without reduction because of the insolvency of the Reinsured in accordance with the provisions of any state law which may be involved.
>
> "In the event of the insolvency of the Company, the liquidator, receiver, or statutory successor of the Company shall give written notice to the Reinsurer of the pendency of a claim against the insolvent company on the bond reinsured within a reasonable time after such claim is filed in the insolvency proceeding. During the pendency of such claim, the Reinsurer may investigate such claim and interpose, at its own expense, in the proceeding where such claim is to be adjudicated, any defense or defenses which it may deem available to the Company or its liquidator, receiver, or stautory successor. The expense thus incurred by the Reinsurer, shall be chargeable, subject to court approval against the insolvent company as part of the expense of the liquidation to the extent of the proportionate share of the benefits which may accrue to the Company solely as a result of the defense undertaken by the Reinsurer."

Following the liquidation order, Emmco made a proposal (the Proposal) to the Liquidator, which sought to effectuate

Article VIII of the Reinsurance Treaty by offering to adjust and pay claims of United for which Emmco shared liability or potential liability and for which advancements Emmco would be reimbursed from other recoveries by the Liquidator.

On March 31, 1971, the Liquidator petitioned the Marion Superior Court for instructions, and on the same day it instructed the Liquidator to accept the Proposal and proceed to adjust claims with payment thereof advanced by Emmco under the conditions set forth in the Proposal.

Meanwhile, on March 16, 1971, the Circuit Court of Leon County, Florida, appointed the Department of Insurance of the State of Florida as Ancillary Receiver of United's Florida assets pursuant to Chapter 631 of the Florida Insurance Rehabilitation and Liquidation Act. The general duties of the Florida Ancillary Receiver were to liquidate United's Florida business and to conserve Florida assets held by United.

Then on May 3, 1971, the State of Florida by O'Malley as Insurance Commissioner, Treasurer of the State of Florida, and as Ancillary Receiver, by counsel, filed in the Marion Superior Court a Motion of Interested Party For Order Modifying 3/31/71 Order For Instructions (Motion to Modify) which sought to modify the Marion Superior Court's Order of March 31, 1971 so as to reserve to Florida all rights of reinsurance pertaining to Florida business. No separate appearance or other pleading was filed by Florida acting through O'Malley in his various capacities. The prayer of this Motion read as follows:

"WHEREFORE, Thomas D. O'Malley, Insurance Commissioner and Treasurer of State of Florida, as Head of Department of Insurance As Ancillary Receiver of United Bonding Insurance Company, prays this honorable Court for an Order Amending Instructions dated March 31, 1971, to except all within the jurisdiction of the Florida Ancillary Receiver and reserving to him all rights of all reinsurance and quota share treaties appurtaining [sic] to Florida business."

On June 28, 1971, after hearing evidence and argument of counsel, the Marion Superior Court denied Florida's Motion and entered the following judgment (omitting formal parts):

"1. *That* the reinsurer herein, *Emmco* Insurance Company, *by the terms of its reinsurance agreements* (O'Malley Exhibits 1 and 2) *did not bind itself to the terms and conditions of the original contracts* (insurance policies or bonds) *entered into between United* Bonding Insurance Company, the defendant, *and any insured* or beneficiary or obligee of any policy or bond.

"2. That any proceeds of the reinsurance agreements due from Emmco Insurance Company, the reinsurer, are assets of the Liquidation proceedings herein for the benefit of general creditors.

"3. That the Motion to Modify and for Instructions of Thomas D. O'Malley should be denied.

"It is, therefore, ORDERED and ADJUDGED that the Motion for Amended Instructions and to Modify this Court's Order of March 31, 1971 is hereby overruled and denied." (Emphasis Supplied.)

After its timely Motion to Correct Errors which was overruled, Florida now appeals.

## ISSUES

Our conception of the issues raised by Florida are:

ISSUE I—Did the Marion Superior Court have personal jurisdiction over the Florida Ancillary Receiver in his various capacities representing the state of Florida?

ISSUE II—Did the Marion Superior Court have jurisdiction over the subject matter of this litigation?

ISSUE III—Is the Florida Ancillary Receiver entitled to any part of the proceeds of the Reinsurance Treaty proceeds contributed by Emmco?

ISSUE IV—Does the Florida Ancillary Receiver have standing to question the Marion Superior Court's approval of the Proposal between the Liquidator and Emmco?

As to ISSUE ONE, the Florida Ancillary Receiver argues that the Indiana Court did not have jurisdiction over the person of the Florida Ancillary Receiver for the reason that the Florida Ancillary Receiver's May 3, 1971 appearance was only for the purpose of contesting the jurisdiction of the Court—a special not a general appearance.

In reply, the Department and Emmco (by Amicus Curiae Brief) contend that the Florida Ancillary Receiver's appearance was a general appearance and its Motion to Modify the Marion Superior Court's March 31, 1971 order was a claim for relief. Therefore, the Florida Ancillary Receiver voluntarily submitted to the personal jurisdiction of the Indiana Court.

As to ISSUE TWO, the Florida Ancillary Receiver contends that the Indiana Court lacked subject matter jurisdiction because Florida-citizen claimants are not within the jurisdiction of the Marion Superior Court.

The Department and Emmco both reply that the Indiana Court did have subject matter jurisdiction because the subject matter of this action is an Indiana liquidation proceeding and the proceeds of an Indiana reinsurance treaty executed between two Indiana insurance corporations.

As to ISSUE THREE, the Florida Ancillary Receiver argues that the doctrine of common law comity prevents the Department from exerting control over Florida claims. Because the State of Florida has restricted the common law doctrine of comity to those states which have adopted the Uniform Insurers' Liquidation Act (the Uniform Act), the extraterritorial vesting of contract rights of a foreign domiciliary liquidator does not extend to Florida when the domiciliary liquidator is located in a state like Indiana which has not adopted the Uniform Act.

Emmco denies that comity is an issue and further that the Florida Ancillary Receiver is not entitled to control any part of the Reinsurance Treaty proceeds due from Emmco because

all such proceeds are exclusively the assets of the Department located in Indiana.

As to ISSUE FOUR, the Florida Ancillary Receiver, under Specifications of Error 3 through 15, presents arguments as to why the Proposal is illegal under Indiana law.

Emmco contends that since the Florida Ancillary Receiver is not entitled to any part of the Reinsurance Treaty proceeds, it lacks standing to question the legality of the Proposal adopted by the Indiana Court for the liquidation of United.

## DECISION

ISSUE ONE—CONCLUSION. It is our opinion that the Marion Superior Court had jurisdiction over the person of the Florida Ancillary Receiver in his various capacities representing the State of Florida.

By advancing the proposition that the Marion Superior Court lacked personal jurisdiction, Florida is pursuing a will-o'-the wisp. When the State of Florida knocked on the doors of our court system seeking admission to assert recognition of a claimed right to reinsurance proceeds, the State of Indiana opened the door and permitted Florida to file its Motion to Modify. The door is opened even wider as Florida takes this appeal. While our view may be myopic, the relevancy of lack of personal jurisdiction over the Florida Ancillary Receiver escapes us.

If Florida is seeking, as it says it is, to exempt from the control of the Department any proceeds of the Reinsurance Treaty which pertain to Florida business then why would it not be anxious for Indiana to recognize its claim? No reason is given.

Relevant or not, by filing its Motion to Modify Florida sought affirmative relief and made no attempt to raise the question of lack of personal jurisdiction by complying with Rule TR. 12(B)(2) nor did the Motion to Modify in any manner raise the question of personal

jurisdiction. By voluntarily filing the Motion Florida effectively entered an appearance pursuant to Rule TR. 4(A) which provides that a court acquires jurisdiction over the person of any party "who under these rules commences or joins in the action, is served with summons or enters an appearance ..." Also see 1 *Harvey, Indiana Practice*, 269, 272. ISSUE TWO—CONCLUSION. It is our opinion that the Marion Superior Court had jurisdiction over the subject matter of this action.

While Rule TR. (12) (H) (1) provides for waiver of personal jurisdiction if not timely raised, lack of jurisdiction of the subject matter of an action is not waived by failure to raise the question and it may be raised *sua sponte* by this or the Supreme Court on appeal. *Cooper* v. *Grant County Board of Review* (1971), 150 Ind. App. 232, 276 N.E.2d 533; *Wedmore* v. *State* (1954), 233 Ind. 545, 122 N.E.2d 1. As Florida has raised this question for the first time on appeal, we now consider it.

The subject matter of these proceedings is the liquidation of United and the disposition of Reinsurance Treaty proceeds, a subject which in general is treated by Ind. Ann. Stat. § 39-3401 *et seq.* (Burns 1969). A liquidation proceeding and a Reinsurance Treaty are intangibles. Subject matter jurisdiction over "an intangible thing," is treated by the *Restatement, Conflict of Laws* (1934), § 51, Comment A thusly:

> "If any state has jurisdiction over an intangible thing, it is by reason of some special circumstances which connect the intangible thing to the state."

Certainly sufficient circumstances are present to connect the intangible subject matter of this action with the State of Indiana. The liquidation proceeding is of an Indiana corporation, in an Indiana Court, pursuant to Indiana statutes. Emmco and United are Indiana corporations both having their principal offices in the State of Indiana. The Reinsurance Treaty was executed in the State of Indiana between Emmco

and United and will be performed by the parties in the State of Indiana.

The only visible aspect of this liquidation proceeding not tied to Indiana are the claims of Florida citizens. However, as will more fully hereinafter appear, Emmco's Reinsurance Treaty with United did not bind Emmco to the terms of the original insurance policies entered into between United and its insureds. So there is no obligation running directly from Emmco to Florda-insured-claimants and the Florida citizens themselves could hardly be considered to be the subject matter of the liquidation proceedings under Indiana law (Indiana liquidates neither its own or Florida citizens).

Florida has offered us no reason or authority why Indiana fails to have subject matter jurisdiction and we know of none. ISSUE THREE—CONCLUSION. It is our opinion that Florida is not entitled to any part of the Reinsurance Treaty proceeds contributed by Emmco.

By a rather circuitous route Florida arrives at the conclusion that the doctrine of common law comity prevents Indiana from controlling "assets" which are payable to Florida claimants of United. (A naked conclusion clothed with no authority) This is so, it is argued, because the State of Florida has restricted comity to those states which have adopted the Uniform Insurers Liquidation Act, which is the substantive law of Florida. Indiana, which has not adopted the Uniform Act, may not exert rights to United's "assets" in Florida since they must be controlled by the Florida Ancillary Receiver pursuant to the terms of the Uniform Act.

Before further dissecting this unique contention, we observe that comity is not and never has been a mandatory principle. It is not a rule of law but one of practice, convenience and courtesy. Comity represents a willingness to grant a privilege, not as a matter of right, but out of deference and goodwill. Its primary value is to promote

uniformity of decision by discouraging repeated litigation of the same question. The obligation of comity is not imperative. *Dow* v. *Lillie* (1914), 26 N.D. 12, 144 N.W. 1082; *Cox* v. *Terminal Railway Association of St. Louis* (1932), 331 Mo. 910, 55 S. W. 2d 685; *Lauer* v. *Freudenthal* (1917), 96 Wash. 394, 165 P. 98.

Florida's attempt to use comity as a means of preventing the Department from exerting control over the proceeds of the Reinsurance Treaty proceeds which relate to Florida claims is only an artificial barrier to the ultimate issue, which is whether any part of the Reinsurance Treaty proceeds constitute an "asset" situated in Florida over which the Florida Ancillary Receiver alone could exert control.

The answer to this question lies in the nature of a reinsurance contract.

A reinsurance contract is a contract of indemnity whereby one insurer agrees to indemnify another insurer, wholly or partially, against loss or liability by reason of a risk which the latter insurer has assumed under a separate and distinct contract as insurer of a third person. Such a reinsurance agreement protects the primary insurer from a risk which it has already assumed. *Eagle Insurance Company* v. *Lafayette Insurance Company* (1857), 9 Ind. 443; Ind. Ann. Stat. § 39-3907 (Burns 1965); *Commercial Casualty Insurance Company* v. *Columbia Casualty Insurance Company* (1938), 22 Tenn. App. 656, 126 S. W. 2d 493; *Stickel* v. *Excess Insurance Company of America* (1939), 136 Ohio St. 49, 23 N.E.2d 839; *Pioneer Life Insurance Company* v. *Alliance Life Insurance Company* (1940), 374 Ill. 576, 30 N.E. 2d 66.

The reinsurance contract is primarily one of indemnity to the reinsured only, not against loss by the hazards specified in the original policy, but against loss or liability by virtue of the original contracts of insurance. *Safeway Trails, Inc.*

v. *Stuyvesant Insurance Company* (1962 D. C. N. C.), 211 Fed. Supp. 227; *Lincoln National Life Insurance Company* v. *State Tax Commission* (1944), 196 Miss. 82, 16 S. 2d 369.

Thus the reinsurance contract is totally distinct from, and unconnected with the original insurance policy. It is not binding on the policy holders of the reinsured company because they are not parties to the reinsurance contract and had no voice in its making. *Federal Life Insurance Company* v. *Barnett* (1919), 71 Ind. App. 613, 115 N.E. 522. The original insured has no interest in the reinsurance contract and the reinsurer is not bound by the provisions of the original insurance policies issued by the company being reinsured. *Western Life Indemnity* v. *Bartlett* (1924), 84 Ind. App. 589, 145 N.E. 786. So claimants of United in Florida have no interest in, nor is there any obligation running to them arising out of the Reinsurance Treaty which could constitute an "asset" in the State of Florida.

Furthermore, there is specific authority that when a primary insurance company becomes insolvent the domiciliary liquidator of that insolvent insurance company is entitled to the proceeds of any reinsurance. 19 *Couch on Insurance* 2d, § 80: 43, puts it this way:

> "If the insurer is insolvent, the reinsurance moneys form part of the general fund for the payment of its debts and is distributed generally as in the case of other assets of the insurer."

Consequently, proceeds of reinsurance are assets of the insolvent reinsured company. *United States The Use of Colonial Brick Corporation* v. *Federal Surety Company,* (4th Cir. 1934) 72 F. 2d 964; *Safeway Trails, Inc.* v. *Stuyvesant Insurance Company, supra.*

Under our liquidation law, title to the insolvent insurance companies' interests in the reinsurance proceeds vests in the Liquidator. Ind. Ann. Stat. § 39-3404(b) (Burns 1965). § 39-3404(b) provides:

"(b) the department shall be vested by operation of law with the title to all of the property, contracts and rights of action of such insurance company as of the date of the order directing it to so liquidate . . ."

In order for the Florida Ancillary Receiver to be entitled to the possession and control of any of United's assets pursuant to Chapter 631 of the Florida Insurers Rehabilitation and Liquidation Act, (the Uniform Act as adopted by Florida) there had to be *assets* located there—we see only a vacuum.

The trial court properly found that Emmco (an Indiana corporation) as reinsurer under the terms of the Reinsurance Treaty (negotiated in Indiana) did not bind itself to the original contracts between United (an Indiana corporation) and its insureds. Therefore, even though part of the reinsurance proceeds would presumably be used to pay Florida claimants, such proceeds were exclusively assets of the Department in Indiana.

ISSUE FOUR—CONCLUSION. It is our opinion that the Florida Ancillary Receiver lacks standing to question the Marion Superior Court's approval of the Proposal, or any of the proceedings involved in the liquidation of United.

In its Brief, under Assignment of Errors 3 through 15, the Florida Ancillary Receiver attacks the legality of the Marion Superior Court's approval of the Proposal because the effect of such approval is to violate Ind. Ann. Stat. § 39-3401 *et seq.* (Burns 1965) relating to liquidation of insurance companies.

For the reasons discussed in ISSUES TWO and THREE, it logically follows that Florida has no lawful interest in the Reinsurance Treaty proceeds, and therefore lacks standing to question the action of the Marion Superior Court.

Even were this not so Florida has failed to cite any authority for these alleged defects and has thereby waived any error which might exist in the Proposal. Rule AP. 8.3(A)(7).

If there are defects in the liquidation proceedings, individual

Florida claimants who have followed the claim procedure established by Ind. Ann. Stat. § 39-3422 (Burns 1965) may pursue whatever remedy our liquidation procedures allow.

The judgment of the trial court is therefore affirmed.

Sullivan and White, JJ., concur.